TOWN OF CLARKSTOWN, Plaintiff,

v.

The NORTH RIVER INSURANCE COMPANY, Defendant.

The NORTH RIVER INSURANCE COMPANY, Third-party Plaintiff,

v.

VILLAGE GREEN PROPERTIES, INC., N.P.S. Technologies Group, Inc., and Colin Halpern, Third-party Defendants.

No. 90 Civ. 1166 (VLB).

United States District Court, S.D. New York.

Oct. 2, 1992.

Donald G. Nichol, Jacobowitz and Gubitz, Walden, N.Y., for plaintiff.

Jeffrey D. Greenberg, Mark D. Lefkowitz, Klotz & McCann, New York City.

Colin Halpern, pro se.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This diversity action involves allegations of default on a performance bond. The plaintiff, The Town of Clarkstown ("Town"), entered into an agreement with Village Green Properties, a developer, whereby Village Green Properties was to make certain public improvements at the Village Green Condominium complex. In a related transaction, on January 7, 1987 Village Green Properties entered into an insurance agreement with the defendant, North River Insurance Company ("North River"), whereby North River issued a performance bond in the amount of $125,000 guaranteeing completion by Village Green Properties of the requisite improvements by January 7, 1989, or in the event of a default by Village Green Properties, payment to the extent of the penal sum of $125,000 to the Town. The purpose of bonding the local improvements and making the Town the obligee was to insure that in the event of a default by the principal, the Town would have sufficient funds for completing the improvements. The principal in this case, Village Green Properties, failed to complete the necessary improvements, and was declared in default by the Town on August 29, 1989. North River received actual notice of the default from the Town in a letter dated November 13, 1989. The Town has moved for summary judgment on damages, seeking to collect the maximum amount of the bond, and interest from the date of default by Village Green Properties.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of the motion is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). As the United States Supreme Court also noted in *Liberty Lobby*, "[O]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment ... [i]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248, 106 S.Ct. at 2510.

The pleadings and submissions in this case do not present a triable issue of material fact. Accordingly, the plaintiff is granted summary judgment to the extent set forth below.

## II

■ The Town asserts that it is entitled to the maximum value of the performance bond, based on the contract itself and its expenditures for completion of the improvements by another contractor pursuant to Clarkstown's local ordinance regulating subdivisions, Town Law § 277. The bond guaranteed performance "in accordance with the present standard specifications of the Town...." North River counterargues that some of the expenses incurred by the town were for improvements which were not intended to be covered by the bond, on the premise that the condominium complex is not a subdivision under Town Law § 277.

The determination of whether a material contract term is ambiguous is the starting point of contract interpretation, *Tokio Marine & Fire Insurance Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir. 1980). In this case, the inquiry ends with the plain language on the face of the bond agreement. I find that the term "Sub Division," typed into the agreement, which was itself drafted by the insurer, North River, contains no ambiguity.

This is not a case where a party is unsophisticated or inexperienced in the subject matter of the contract; North River presumably has expertise in the field of bond drafting and would be expected to choose carefully words that express its intent, particularly where a municipality is named as obligee on the face of the bond agreement.[1]

Moreover, the rule of *contra proferentum* applicable in such a context favors construction against the carrier. *Uniroyal Inc. v. Home Insurance Co.*, 707 F.Supp. 1368, 1372–78 (E.D.N.Y.1988).

Based on the face of the agreement, I conclude that the scope of the bond encompasses any areas of work required by Town Law § 277. North River cannot evade its own contractual terms. The insurer is liable to the Town for the cost of completing the remaining improvements up to the full extent of the bond.

## III

The threshold legal issue underlying calculation of the actual damages owed by North River to the Town on the bond itself and, secondarily, interest due to the Town, is whether North River was entitled to notice by the Town in the event of default by the principal where, as is this case, the agreement is silent as to notice. North River received no notice from the principal, Village Green Properties, or the Town until after November 13, 1989.

■ I reject the Town's argument that it had no duty to notify the insurer. Notice provisions are ordinarily incorporated into insurance instruments, but even where they are not, the law will imply an obligation that the obligee notify the insurer of an occurrence or claim within a reasonable time. *Olin Corp. v. Insurance Co. of North America*, 743 F.Supp. 1044, 1051 (S.D.N.Y.1990). The submissions of the parties indicate that although the Town declared the bond in default on August 29, 1989, notice of the default did not reach North River until it received the November 13, 1989 letter. Only at that point was North River in possession of sufficient information to have triggered an inquiry by the insurer into the status of its obligation to the town.

■ The requirement of timely notification is a safety device that ensures that an

---

1. North River's submission of a multi-page performance bond agreement relating to a subdivision, dated November 8, 1988, as evidence of its customary contractual practices, does not save the insurer on the earlier-signed one-page agreement at issue in this case. See defendant's affirmation in opposition to plaintiff's motion for summary judgment, Exhibit A.

insurer be put in the best possible position to reduce the cost of the claim. Thus failure to provide notice should result in a reduction in the sum owed in an amount which would offset the prejudice incurred. However, I find no basis in the affidavits or exhibits for holding that North River owes less than the full amount of $125,000. The Town has submitted expenditure receipts for the cost of completing the improvements which total $289,415.26, well in excess of the bond's maximum sum of $125,000. North River's assertion that with timely notice it might have completed the improvement for less than $125,000 is supported by no computations or other evidence. This is particularly relevant since North River has stated that $125,000 could not have covered the cost of completing all of the § 277 subdivision improvements. See defendants' statement of material facts in issue, para. 34. Thus there is no triable issue of fact as to North River's full liability on the $125,000 bond itself.

## IV

 The only remaining issues are the Town's entitlement to interest on the bond and, if so, the date from which interest should accrue. Under New York General Obligations Law § 7–301, which governs in this diversity action, the amount recoverable from a surety may exceed the amount specified in the undertaking, here the performance bond, by interest which shall be awarded from the time of the surety's default. The interest is intended to return the parties to the financial position they would have been in had the surety paid the obligation when due. *Insurance Company of North America v. U.S.*, 951 F.2d 1244, 1246 (Fed.Cir.1991). Further, if a surety delays payment beyond "proper notification" of liability, interest accrues on the debt. Id. at 1246. Here the default by the surety dates from its receipt of the Town's notification. Having concluded that effective notification took place with the Town's letter to North River dated November 13, 1989, see part III above, the Town is entitled to interest from November 16, 1989 (allowing three days for mail transmittal from the time the notification was sent).

Summary judgment to the extent set forth in this memorandum order is granted to the plaintiff. Plaintiff is directed to submit a proposed judgment on notice, including interest accruing from November 16, 1989, crediting the defendant with any applicable escrow funds.

## V

The insurer's motion for permission to file a third-party complaint is granted.

SO ORDERED.