**MORSE/DIESEL, INC., Plaintiff,**

v.

**TRINITY INDUSTRIES, INC., Mosher Steel Company and Aetna Insurance Company, Defendants.**

**No. 84 Civ. 5791 (LAP).**

United States District Court,
S.D. New York.

Dec. 21, 1994.

Anthony J. D'Auria, James J. Terry, Winston & Straw, New York City, for defendant Aetna Ins. Co.

## OPINION and ORDER

PRESKA, District Judge:

This is an action in which the plaintiff general contractor seeks to recover costs associated with the untimely completion of one of its subcontractor's work from the subcontractor and the subcontractor's surety company. After a six-week trial held earlier this year, a jury found defendants liable to plaintiff for approximately $25.8 million in compensatory damages.

Presently before me are three motions. Defendant Aetna Insurance Company ("Aetna") seeks relief from the jury's verdict through a motion for a new trial pursuant to Fed.R.Civ.P. 59. Plaintiff Morse/Diesel, Inc. ("Morse/Diesel") moves for an order entering judgment against both defendants in the amount of the jury's verdict, with interest, fees, and costs added on. Finally, in the event judgment is entered, both defendants have moved for a 30 day stay of execution.

My rulings, set forth in more detail below, are as follows. Aetna's motion for a new trial is denied on the basis of my finding that the trial errors alleged by Aetna were not properly preserved by Aetna's prior counsel (who was simultaneously counsel for Trinity Industries, Inc. ("Trinity")) as grounds for post-trial relief. Morse/Diesel's motion for entry of judgment is granted to the extent indicated below, and defendants' motion for a stay of execution is denied.

### Background

The subject of this ten year old litigation is the construction of the Mariott Marquis Hotel in the heart of Manhattan. Plaintiff, Morse/Diesel, was the general contractor for the project. Defendant Mosher Steel Company ("Mosher") was the subcontractor in charge of erecting the project's structural steel. Defendant Trinity is the corporate successor to Mosher.[1] Defendant Aetna issued a performance bond on behalf of Trinity with respect to the structural steel subcontract.

Arthur S. Friedman, Peter N. Wang, Charles R. Macedo, Friedman, Wang & Bleiberg, P.C., New York City, for plaintiff Morse/Diesel, Inc.

Robert K. Cox, Daniel E. Cohen, Watt, Tieder & Hoffar, McLean, VA, for defendants Trinity Industries, Inc. and Mosher Steel Co.

1. For the sake of clarity, I shall refer to the party who performed the structural steel subcontract as "Trinity."

For reasons not necessary to recount here, Trinity was over a year late in completing the erection of the structural steel. Morse/Diesel thus instituted this litigation, claiming against Trinity and Mosher as principals, and against Aetna on the performance bond, for some $37 million in damages resulting from the delay. There followed some ten years of litigation capped by a six-week jury trial.

As the trial drew to a close, I convened a conference to discuss the jury charge. Prior to the conference, I had examined the parties' earlier-submitted requests to charge, formulated a draft jury charge, and distributed my draft to the parties for their initial review. At the conference, held on May 17, 1994, counsel for the parties and I went through the jury charge page by page, and I heard counsel's objections, discussion and argument where either or both sides disagreed with the draft. The conference lasted some five hours; there was no court reporter present.

The following day, having provided the parties with a revised proposed jury charge incorporating some of their objections to my initial draft, I afforded counsel the opportunity to state on the record their objections to the charge. I thereafter made changes to the charge in response to some of the objections voiced by counsel on the record at this juncture. *E.g.*, Trial Transcript, Vol. 29, 5/18/94, at 5794 1.1–1.10. Aetna and Trinity's common trial counsel then voiced none of the objections which Aetna, by new and separate counsel, now advances as error. After counsel had completed stating their objections for the record, counsel immediately proceeded to deliver their closing arguments. I then instructed the jurors on the law of the case and discharged them to deliberate. The following day, the jury returned a verdict for Morse/Diesel, against both defendants, for approximately $26 million.

## DISCUSSION

### I. *The Rule 59 Motion*

In the instant Rule 59 motion, Aetna's new counsel attacks my instructions to the jury concerning plaintiff's performance bond claim against it. The relevant language, in its entirety, as read to the jury, is as follows:

> [W]ith regard to Morse/Diesel's claims against Aetna, you have heard evidence that Aetna Insurance Company posted a performance [bond] as surety for Mosher/Helena.

> The primary purpose of a performance bond is to guarantee that the principal, in this case, Mosher/Helena, will perform its entire contract. It is a form of insurance.

> The bond indemnifies an owner against breach by the contractor. The liability of a surety on a performance bond follows the liability of the principal on the bond. In other words, the surety will be held liable if the principal is held liable, so if you choose to render a verdict against Mosher/Helena, such verdict should also be rendered against Aetna.

Aetna's new counsel now contends this charge was incorrect in three respects. First, Aetna now maintains, my characterization of the performance bond as "a form of insurance" was a misstatement of the law and a conceptual error. Second, Aetna now asserts that I erred in neglecting to instruct the jury that its liability under the performance bond was contingent upon its receipt from Morse/Diesel of a formal declaration of default by Trinity (Aetna's contention is that such notice was never received). Finally, Aetna now argues that I erred in instructing the jury that Aetna's liability to Morse/Diesel was co-extensive with Trinity's; on the contrary, Aetna now claims, its exposure was narrower. The relevant law and the terms of the performance bond, Aetna now says, rendered it liable only for the excess costs of completing Trinity's subcontract work in the event Trinity failed to do so; consequential damages stemming from Trinity's delay in performing its subcontract (*i.e.*, the type of damages awarded Morse/Diesel by the jury) were not within the range of its exposure.

Aetna contends that as a result of these errors, the jury was permitted to render a verdict against it that was contrary both to law and to the performance bond. Plaintiff counters that Aetna's points of error were not properly preserved and that, even consid-

ering the merits, my instructions to the jury regarding Aetna were correct.

## A. *Preservation of Errors*

■ In pertinent part, Rule 59 provides that:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

A motion under Rule 59 may be predicated on a court's error in giving, or refusing to give, instructions to the jury. *Anderson v. Branen*, 17 F.3d 552, 555 (2d Cir.1994); *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992). However, under Rule 51,

[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

■ Rule 51 does not require a party to make its exceptions upon a formal record. One must, however, object in a manner which satisfies the rule's purpose of alerting the trial judge to the alleged error and allowing the court an opportunity to correct it. *See Niehus v. Liberio*, 973 F.2d 526, 529 (7th Cir.1992); *Kakavas v. Flota Oceanica Brasileira, S.A.*, 789 F.2d 112, 120 (2d Cir.) (holding point of error preserved where counsel's actions had been "enough to alert the judge to the question whether his charge properly reflected the law"), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); *Cohen v. Franchard Corporation*, 478 F.2d 115, 122 (2d Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973).

■ With respect to its first two points of error, it is apparent that Aetna did not comply with the dictates of Rule 51. Prior to the

filing of this motion, counsel for Aetna did not so much as mention, much less object to, the charge's reference to the performance bond as "a form of insurance"[2] or the charge's failure to note that a declaration of default was a precursor to Aetna's liability. As to the latter point, Aetna's new counsel now argues that it was raised "implicitly" in one of his predecessor's proffered instructions, titled "Performance Bond Only Ensures Performance." However, even if that were true—and it is not[3]—Rule 51 expressly requires that objections concerning jury instructions be raised "distinctly." Thus, a point buried "implicitly" in the text of a requested charge is not properly preserved for post-trial review. *Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943) (noting that an objection to a charge "must ... bring into focus the precise nature of the alleged error").

■ As to the third error alleged, Aetna argues that the instruction on the scope of its liability was erroneous in failing to provide that Aetna's liability on the performance bond was limited to completion costs and, conversely, excluded delay damages. Aetna maintains it preserved the point for appeal by incorporating it into a requested instruction titled "Performance Bond Only Ensures Performance;" raising it during the off-the-record charge conference; and marking the "Performance Bond Only Ensures Performance" requested instruction into the record as part of an exhibit of rejected charges.

Had all of that indeed taken place, the point assuredly would have been called to my attention and, consequently, would be viable for post-trial consideration. The facts, however, are not as Aetna's new counsel now states.

Counsel is correct that an instruction titled "Performance Bond Only Ensures Performance" was among defendants' requested charges. The text of that instruction read:

---

**2.** The defense also failed to object when plaintiff's counsel referred to the bond as, "in effect, insurance" in his opening statement. *See* Trial Transcript, Vol. 1, 4/5/94, at 61.

**3.** The proffered instruction is discussed in more detail and reproduced in full below. Even read

in the manner most favorable to Aetna, however, it speaks only to the type of damages covered by the performance bond, which is a separate issue from any requirement of a declaration of default as a condition precedent to liability.

A performance bond only ensures performance up to the dollar value of the bond. In other words, Aetna agreed to pay the costs not in excess of $31,800,-000.00 required to complete the initial Structural Steel Subcontract work if, and only if, Trinity failed to complete the Subcontract. Aetna did not ensure that the Project would get done, only that it would provide $31,800,000.00 if needed to complete the Structural Steel Subcontract. If you find that Trinity fully performed its work as required under the Subcontract, you shall find in favor of Aetna.

■ Counsel now argues with the benefit of the extensive papers on this motion that this instruction can be read as asserting the argument that Aetna's liability did not extend beyond completion costs. Counsel is incorrect, however, in his assertion that the instruction is unambiguous in this regard.[4] Moreover, passing the question of the instruction's ambiguity, the mere submission of a written instruction prior to trial is not, without more, sufficient to satisfy Rule 51. *See Salzmann v. Sciccitano,* 782 F.Supp. 195, 198 (E.D.N.Y.1991) (citing cases). *See also Western Transmission Corp. v. Colorado Mainline, Inc.,* 376 F.2d 470 (10th Cir.1967). This is particularly true in the context of a protracted and complicated construction litigation where, over years, numerous factual and legal issues were advanced and abandoned.

Aetna, of course, does not rest on its mere submission of the instruction but claims also that it raised the issue of the scope of its liability during the unrecorded charge conference. According to the sworn affidavit of Robert Cox, counsel to both Aetna and Trinity at the time of that conference, during that conference his co-counsel, Daniel Cohen, objected to my refusal to include the "Performance Bond Only Ensures Performance" instruction, arguing that "because Trinity had fully performed its bonded work, the provi-

sions of the performance bond could not provide the basis for Morse/Diesel's lawsuit against Aetna." Cox 9/29/94 Aff. at ¶ 7. At best, this is an indirect way of stating that Aetna was liable only for completion costs. Cox, however, avers that counsel and I engaged in a "prolonged and serious debate" over Cohen's position, *id.,* and, presumably, he would contend that during the course of that debate, Aetna's position was fleshed out more completely.

Cox's affidavit is contradicted by that of Peter Wang, who attended the conference as counsel for Morse/Diesel. Wang states that the only objection concerning Aetna raised by Trinity and Aetna's joint defense counsel at the unrecorded conference was to the charge's failure to instruct that Aetna could not be liable for more than the $31.8 million penal amount of the performance bond. Wang 10/18/94 Aff. at ¶ 6. He further states that he is "certain that defendants did *not* raise at the conference *any* of the issues contained in Aetna's motion," *id.* (emphasis in original), and notes specifically that defense counsel "never stated or implied that the basis for [the 'Performance Bond Only Ensures Performance' instruction] was ... that ... Aetna could not be held liable under the performance bond for all types of damages." *Id.* at ¶ 5.

The fact is that the only argument raised by defense counsel in connection with Aetna was that the instructions should be modified to make clear that the maximum extent of Aetna's liability was $31.8 million. That was the sole basis upon which counsel argued for the inclusion of the "Performance Bond Only Ensures Performance" instruction. There was no debate over the possibility that Aetna's liability was limited to certain *types* of damages, only a concern expressed by defense counsel that the charge reflect a $31.8 million cap on the *amount.* My response to this latter point was that an instruction im-

---

**4.** As discussed below, the text can also be read to mean that Aetna is only liable in the event Trinity breaches its subcontract (not necessarily by failing to complete its work), and even then, not for more than $31.8 million. In any event, the language of Aetna's requested instruction is not "plainly 'diametrically opposed'" to the lan-

guage of the jury charge as given. Thus, Aetna's reliance upon *Wright v. Farm Journal, Inc.,* 158 F.2d 976, 978 (2d Cir.1947) ("No objection could be plainer than the request for an instruction diametrically opposed to the one given in the court's charge."), is misplaced.

posing a cap on damages applicable to one defendant only would be unduly confusing and that a verdict against Aetna in excess of the penal amount of the performance bond could be remedied as a matter of law after trial. Mr. Cox and Mr. Cohen accepted this solution, and no further discussion concerning Aetna took place; so far as I was aware, based on their statements and their conduct in not pursuing the matter further, they were satisfied.

Defense counsel for Trinity and Aetna did not state at the unrecorded conference, either directly or indirectly, Aetna's current position that its liability was limited to completion costs and did not include delay damages. Had counsel done so, it would certainly have been an event worth remembering, because it would have been the first time in the ten-year history of the case that such an argument was put forth. Neither in its pleadings, nor in a summary judgment motion, nor in any of the many motions in limine, nor during the trial itself did their common counsel suggest that Aetna's liability might diverge from Trinity's based on the type of damages claimed by Morse/Diesel. Indeed, an examination of the trial transcript demonstrates that the parties tried the case as if it were a dispute solely between the principal parties, with Aetna merely an interested but uninvolved spectator. Common counsel for the defendants offered no evidence concerning Aetna or the performance bond, did not cross-examine any of plaintiff's witnesses on any matter relating to Aetna or the performance bond, and did not so much as mention Aetna or the performance bond in either the opening or closing arguments before the jury.[5]

That Aetna claims to have presented this argument at trial is all the more astonishing

because, if correct, it could have provided the basis for summary judgment in Aetna's favor very early on in this lengthy litigation. Aetna's position now is that its only liability under the performance bond was for costs beyond the subcontract price incurred to complete Trinity's subcontract work in the event Trinity failed to do so. However, there is not, and never has been, any dispute that Trinity did in fact complete its work, albeit late. Accordingly, the argument Aetna now puts forth as a basis for a new trial was available not only before the jury rendered its verdict, but also before Aetna filed its answer in 1987 and continuously thereafter. As Mr. Cox now states Aetna's position, "because Trinity had fully performed its bonded work, the provisions of the performance bond could not provide *the basis for Morse/Diesel's lawsuit* against Aetna". Cox 9/29/94 Aff. at ¶ 7 (emphasis added). Had Aetna's counsel at the May 17, 1994 charge conference raised this potentially dispositive argument for the first time, at the eleventh hour and fifty-ninth minute of a ten year litigation, a battle royal would have ensued. The fact of the matter is, however, that no such argument was raised.

That Aetna did not raise its new scope-of-liability objection at the off-the-record charge conference makes quick work of its contention that the objection was preserved by its marking the "Performance Bond Only Ensures Performance" instruction as part of the bundle of instructions marked the next day as Exhibit 311, instructions which had been rejected in whole or in part. Following this course enabled counsel to preserve objections as to which counsel had already "stat[ed] distinctly the matter objected to and the grounds of the objection", whether at the previous day's five-hour unrecorded confer-

---

5. In paragraph 4 of an affidavit sworn to on August 4, 1994, James J. Terry, Aetna's new counsel, who was not present at the trial, stated

In the course of the trial of this action Watt, Tieder [Aetna and Trinity's joint trial counsel] sought to impress upon this Court the differentiation, as a matter of law, between the liability of a principal and that of a performance bond surety, in order that an appropriate disposition

of the claims of Morse/Diesel against Trinity and Aetna respectively could be achieved.

At the September 23, 1994 pre-motion conference held to discuss Aetna's motion for a new trial, I invited counsel for Aetna to provide me with citations to places in the record reflecting those alleged attempts by defendants to distinguish the liability of Aetna from the liability of Trinity. Transcript of September 23, 1994 con-

ence or on the record prior to closings.[6] However, handing up language I had refused did not give the parties *carte blanche* to attack the jury's decision with any objection arguably grounded upon rejected charges, without regard to whether I had passed on the argument or not. Any assertion that counsel reasonably believed otherwise is not worthy of credence. Accordingly, in the absence of a prior explication of Aetna's scope-of-liability objection, counsel's handing up of the "Performance Bond Only Ensures Performance" instruction did nothing to preserve the point.[7]

### B. *Plain Error*

■ Aetna's final contention relates to my alleged error in failing to instruct the jury that a default notice was a precursor to liability · on its behalf. Even if it did not timely object on the point, Aetna says, my failure to give that instruction constituted plain error and so may be considered as grounds for post trial relief despite Aetna's breach of Rule 51.

■ Clearly, the law of this circuit allows a court to excuse a party's failure to object timely to a jury instruction in the case of plain error. The Court of Appeals has offered various formulations of when such leniency is proper. *See Latsis v. Chandris,* 20 F.3d 45 (2d Cir.), *cert. granted,* —— U.S. ——, 115 S.Ct. 354, 130 L.Ed.2d 309 (1994) ("An error is plain if it results in a miscarriage of justice, or if it is an obvious instance of misapplied law."); *Anderson v. Branen,* 17 F.3d at 556–557 ("This Court ... will disregard the failure to object where there is plain error affecting substantial rights that goes to the very essence of the case...."); *Williams v. City of New York,* 508 F.2d 356, 362 (2d Cir.1974) ("[T]his court may take cognizance of the court's error, though timely objection

was not made, if it is 'plain and may result in a miscarriage of justice.'"); *Troupe v. Chicago, Duluth & Georgian Bay Transit Auth.,* 234 F.2d 253, 259 (2d Cir.1956) ("[A]ppellate courts, in the public interest, may ... notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."). Semantic differences aside, the underlying ethos of all of these cases calls upon a court to perform "a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).

In the matter at hand, I am of the opinion that the balance tips in favor of finality. To begin with, defendants are hard-pressed to argue that my alleged error was "plain" or "obvious" when they themselves failed to flag the issue until after the conclusion of ten years of litigation. Indeed, without purporting to address the merits of whether or not a declaration of default was required, I note that Aetna's primary authorities on the point do not apply the law of New York, which governs here. *See L & A Contracting Co. v. Southern Concrete Services, Inc.,* 17 F.3d 106 (5th Cir.1994) (applying Florida law); *Granite Computer Leasing Corp. v. Travelers Indemnity Co.,* 894 F.2d 547 (2d Cir.1990) (applying California law); *United States v. Seaboard Surety Co.,* 817 F.2d 956 (2d Cir.1987) (applying federal law). Plaintiff, on the other hand, proffers two New York cases holding that a notice of default is not a condition precedent to claiming against a surety. *Menorah Nursing Home, Inc. v. Zukov,* 153 A.D.2d 13, 548 N.Y.S.2d 702 (2d Dept.1989); *Babylon Associates v. County of Suffolk,* 101 A.D.2d 207, 475 N.Y.S.2d 869 (2d Dept.1984).

---

ference at p. 14. No such citations were provided.

6. Using such a procedure saves time, and its propriety is well established. *See, e.g., Niehus, supra.*

7. The fact that the "Performance Bond Only Ensures Performance" instruction was the basis for defense counsel's May 17 objection to the charge's failure to dictate a $31.8 million cap on

damages against Aetna does not help Aetna with regard to the preservation of its scope-of-liability exception. *See Wells Real Estate, Inc. v. Greater Lowell Board of Realtors,* 850 F.2d 803, 809 (1st Cir.1988) ("An exception on one ground cannot serve as the basis for another, on a different ground, on appeal"); 9 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2254 (1971).

Thus, whatever the ultimate answer to the question posed by Aetna, the controlling law on the issue is not of such clarity that an erroneous charge could be said to impugn the integrity of the judicial process or be described as an obvious miscarriage of justice. *Cf. Abou–Khadra v. Mahshie,* 4 F.3d 1071, 1078–79 (2d Cir.1993) (court committed plain error where charge allowed jury to award double recovery in direct contravention of express terms of statute upon which plaintiff rested his claim); *Williams, supra* (court committed plain error in neglecting to instruct jury that award of punitive damages against defendant city required a finding of affirmative wrongdoing on city's part); *Ferrara v. Sheraton McAlpin Corp.,* 311 F.2d 294 (2d Cir.1962) (court committed plain error in negligence case by instructing jury that defendant could be found to have had constructive notice of dangerous condition without defining the term "constructive notice").

Of course, that an error (if one was committed here) was not obvious does not change the fact that it was an error and should ordinarily, in the interests accuracy and justice, be corrected. In circumstances such as these, however, where an aggrieved litigant has failed to raise an alleged error until after trial, *Frady* instructs that the factors of finality and efficient judicial administration be given due weight.

Those factors are particularly strong in the present case. Though it may at this point sound redundant, it bears repeating that Aetna neglected to raise the error it now labels "plain" throughout ten years of litigation and six weeks of trial. During all of that time, Aetna was represented by experienced counsel. Moreover, Aetna itself is a sophisticated corporation engaged in the business of issuing performance bonds of the type at issue here. It cannot credibly claim to be unfamiliar with the sorts of issues that arise in this kind of litigation.

In light of these facts, I conclude that as between allowing a possible error in my charge to go unrectified and forcing the plaintiff to redo a six-week construction trial, ten years in the making, the greater injustice lies with the latter.[8] Whether Aetna's astounding failure to raise its supposedly-dispositive[9] point of error was by design or blunder, at this point, fundamental fairness dictates that it is just too late.

## II. *Motion for Entry of Judgment*

Morse/Diesel seeks an order entering judgment against Trinity and Aetna in the amount of $25,775,933.00, the amount of the jury verdict. In addition, Morse/Diesel seeks from both parties 1) prejudgment interest running from October 1, 1985 and calculated at a rate of three percentage points above the prime rate of Chemical Bank (formerly Manufacturers Hanover Trust Co.); and 2) attorneys' fees and costs incurred in prosecuting this litigation. There can be no doubt that Morse/Diesel is entitled to judgment against both defendants in the principal amount awarded by the jury. The disputed issues concern Morse/Diesel's request for interest and costs. Insofar as each of the defendants asserts different arguments on those subjects, it is easiest to consider each party separately.

### A. *Interest*

In Morse/Diesel's view, the question of Trinity's and Aetna's liability for prejudgment interest is straightforward: by statute, a prevailing plaintiff in a contract action is entitled to interest computed from the earliest ascertainable date its cause of action existed, as determined by the trier of fact. N.Y.CPLR § 5001 (McKinney 1992).[10] The default rate of interest is nine percent per

---

8. I also note that the Court's docket is not such that the impact of having to re-try a six-week case because of a party's mistake will go unfelt.

9. If Aetna's position is that a formal declaration of default was a precursor to any liability on its part, it presumably could have conducted discovery to ascertain whether any such declaration had been issued and then made a motion for summary judgment upon learning what it now claims is the answer.

10. The entitlement to and amount of interest in a breach of contract action is governed by the state law under which the contract is interpreted, in this case, New York. *Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d 39, 41 n. 2 (2d Cir.1979).

year. N.Y.CPLR 5004 (McKinney 1992). However, if the contract between the parties provides for a different rate, that rate shall control. *See Marine Management, Inc. v. Seco Management, Inc.*, 176 A.D.2d 252, 574 N.Y.S.2d 207, 208 (2d Dep't 1991).

Applying this law to the facts at hand, Morse/Diesel maintains that its victory over Trinity on its contract claims entitles it to prejudgment interest computed from the date determined by the jury, October 1, 1985.[11] Further, Morse/Diesel says, such interest should be calculated using the rate specified in Article 11.4 of the contract between the parties, which provides that interest is to be paid "at three (3) percentage points in excess of the rate of interest announced from time to time by Manufacturers Hanover Trust Co. as its prime rate or if it is less, at the maximum interest rate permitted by law." Trinity's and Aetna's objections to this position are sundry. The simplest course is to treat them *seriatim*.

1. Trinity

a. The Court Should Reduce Morse/Diesel's Prejudgment Interest to Account for Litigation Delay

[8] Trinity maintains Morse/Diesel's interest award should be reduced to account for allegedly unjustified delays caused by Morse/Diesel throughout this litigation. Insofar as interest was accruing during such periods, Trinity argues, I should employ the Court's equitable powers to prevent Morse/Diesel from profiting from malfeasance.

A review of the history of this litigation does not lead me to conclude that either party was substantially more or less responsible for its seemingly interminable duration.

Both sides filed numerous motions, prevailing on some, losing on others; both sides initiated extensive discovery—all unremarkable in a case of this type. Accordingly, even if I did have the equitable power to reduce Morse/Diesel's interest, I would not be inclined to do so. The point is moot, however, because I do not have such a power. Prejudgment interest under New York law is a legal remedy, not an equitable one, and the statute clearly provides that the finder of fact is to determine the date from which interest should accrue. N.Y.CPLR 5001(c).[12] Trinity could have placed its arguments for a reduction of Morse/Diesel's interest award before the jury. Having neglected to do so, it must accept the jury's finding that prejudgment interest is to be computed from October 1, 1985.

b. Morse/Diesel Should Not Recover Interest on Its "Pass Through" Claims.

■ Among the claims asserted against Trinity by Morse/Diesel were several for damages suffered by other parties. Those claims, referred to as "pass-through" claims, were asserted against Trinity pursuant to so-called "liquidation agreements" between the damaged parties and Morse/Diesel. Such agreements permit one who is potentially liable to another to settle the other's claim for whatever amount can be recovered through the assertion of the claim against a third party, who is alleged to have caused the injury. Liquidation agreements are commonly employed in the New York construction industry as a means to apportion liability among owners, general contractors, and subcontractors, among whom such efforts are otherwise hindered by a lack of contractual privity.[13] Without question, they are sanc-

11. In fact, the jury found that interest should be computed from "September 1985." Rather than litigate the issue of how to divine a specific day from that general verdict, Morse/Diesel has elected to assume the most conservative position.

12. Trinity's authorities suggesting that I have the power to reduce Morse/Diesel's interest award all involve situations where interest was awarded as a matter of the court's discretion. *See Norte & Co. v. R.L. Huffines*, 416 F.2d 1189 (2d Cir.1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970); *The Wright*, 109 F.2d 699,

702 (2d Cir.1940). By contrast, under New York law, a court maintains no discretion to deny interest to a prevailing contract plaintiff. *Malson Ltd. v. Liberty Mutual Fire Ins. Co.*, No. 84 Civ. 1717 (CMM), 1986 WL 2963, at *1 (S.D.N.Y. Mar 3, 1986).

13. Posit a case where a subcontractor causes delay in a construction project which results in harm to the project's owner. The owner lacks privity with the subcontractor, so it cannot seek to recover from the subcontractor directly. Its sole contractual recourse is to proceed against

tioned by the law of New York and accepted as a basis of recovery. *See American Standard v. NYC Transit Auth.*, 133 A.D.2d 595, 519 N.Y.S.2d 701, 702 (2d Dep't 1987); *Lambert Houses Redevelopment Co. v. HRH Equity Corp.*, 117 A.D.2d 227, 502 N.Y.S.2d 433, 435 (1st Dep't 1986) (explaining that liquidation agreement "bridges the gap in privity between subcontractor and owner").

Trinity contends that Morse/Diesel should not be awarded interest on its pass-through claims. Those claims, Trinity correctly observes, were asserted on behalf of parties who are not in privity with it and who, therefore, could not have asserted contract claims against it. In light of New York law providing that only parties prevailing on contract claims are entitled to prejudgment interest, Trinity contends, it is improper to award interest for the benefit of those who had no contract claims to assert.

Trinity offers no authority in support of the proposition that a plaintiff's recovery on a pass-through claim should not include the full measure of damages allowed by the law. Moreover, its argument fails to account for the fact that New York law has embraced the assertion of pass-through claims supported by liquidation agreements. As noted above, the policy of New York is to permit the use of liquidation agreements to bridge gaps in privity and reduce litigation. *See* note 13, *supra.* This policy would be undermined if the beneficiaries of pass through claims ("injured parties") were not entitled to recover interest. For in that case, injured parties would be less inclined to make use of liquidation agreements and pass-through claims and would instead litigate against the party

with whom they shared contractual privity and from whom interest would be available ("the party in privity"). The party in privity would then be forced to prosecute an action against the responsible party, resulting in a duplication of effort and waste of resources. Furthermore, assuming the party in privity recovered, the responsible party would end up paying interest on an amount equal to that paid to the injured party (by the party in privity), leaving the responsible party no worse off than if a pass-through claim had been asserted.

Trinity's contention that interest should not be awarded on Morse/Diesel's pass-through claims is backed by neither law nor logic. Accordingly, it is rejected.

c. Interest on the Morse/Diesel's Pass–Through Claims Should be Awarded at the Statutory Rate

■ In a variation of the argument discussed above, Trinity contends that even if Morse/Diesel is entitled to interest on its pass-through claims, such interest should be calculated at the statutory rate rather than the contract rate. The contract rate, Trinity says, applies only to interest on damages suffered by Morse/Diesel;[14] thus, interest on damages suffered by beneficiaries of the pass-through claims should be calculated according to the statute.

As with the previous argument, Trinity's contention ignores the fact that New York law allows parties who have signed liquidation agreements to assert pass-through claims as if they were their own. Given that fact, along with the dearth of authority in support of any other course, I reject Trinity's

the general contractor, who, pursuant to the general contract, is liable to the owner for harms resulting from the acts of its subcontractors. Assuming the owner recovers from the general contractor, the latter would then proceed against the subcontractor, who would be bound under its subcontract to indemnify the general contractor for liability arising out of its work. The two suits would be entirely duplicative of each other (the issue in both being whether the subcontractor had been responsible for the owner's damages) and wasteful of both public and private resources.

Where a liquidation agreement is employed, the general contractor, in effect, confesses liability to the owner, and the two agree to liquidate

damages in whatever amount the general contractor can recover from the subcontractor through asserting the owner's claim. The subcontractor is left in basically the same position of having to defend against the general contractor and prove that it did not cause damage to the owner. The primary effect of the liquidation agreement is to bridge the "privity gap" between the owner and subcontractor so that the parties' liability to one another can be resolved in one suit instead of two.

14. Article 11.4 of the Trinity–Morse/Diesel subcontract specifies an interest rate for costs "incurred by the Contractor [Morse/Diesel]."

invitation to distinguish between Morse/Diesel's pass-through claims and its other claims with respect to the rate of prejudgment interest. Additionally, I point out once again that Trinity suffers no real prejudice from this ruling. Had Morse/Diesel chosen not to pass-through the claims of other damaged parties and elected to pay those other parties damages instead, it could have sought recovery of those damages under the Trinity–Morse/Diesel subcontract and recovered interest at the contract rate.

### d. The Maximum Interest Rate Allowed by the Contract is Nine Percent

As noted above, the contract provides for interest to be paid at a rate "three (3) percentage points in excess of the rate of interest announced from time to time by Manufacturers Hanover Trust Co. as its prime rate or if it is less, at the maximum interest rate permitted by law." Trinity contends that this language sets the maximum rate of interest at nine percent, which is New York's statutory rate of prejudgment interest. N.Y.CPLR § 5004 (McKinney 1992).

The more natural reading of the contract is the one advanced by Morse/Diesel, namely, that the maximum rate of interest under the contract is that prescribed by applicable usury laws. This comports with the parties' use of the phrase *"permitted* by law." (emphasis added). Moreover, at the time the contract was signed, it was clearly the law of New York that parties were allowed to contract for a rate of interest above that prescribed by § 5004 of the CPLR. *See, e.g., Secular v. Royal Athletic Surfacing Co.,* 66 A.D.2d 761, 411 N.Y.S.2d 615 (1st Dep't 1978); *Astoria Federal Savings and Loan Ass'n v. Rambalakos,* 49 A.D.2d 715, 372 N.Y.S.2d 689 (2d Dep't 1975). Trinity's position is rejected. New York's usury laws (to the extent they are applicable) constitute the only cap on the contractual rate of interest.

Accordingly, interest on the judgment against Trinity is to be calculated at the rate of three percentage points over the prime rate as announced by Manufacturers Hanover Trust Co., beginning on October 1, 1985 and continuing until the entry of judgment.

### 2. Aetna

The issue of prejudgment interest chargeable to Aetna requires consideration of two types of interest that could be awarded. First, there is the possibility that Aetna, as part of its surety obligations, may be held to account for interest awarded against Trinity. Additionally, there is the question of whether Aetna should be assessed interest due to a default on its part of its own obligation to pay on the bond.

As a matter of New York law, Aetna may be held liable for Trinity's prejudgment interest. *Mid–State Precast Systems v. Corbetta,* 202 A.D.2d 702, 608 N.Y.S.2d 546 (3d Dep't 1994); 63 N.Y.Jur.2d, Guaranty and Suretyship § 411. By statute, however, Aetna's liability for that component is capped at the amount of its bond, $31.8 million. N.Y.Gen.Oblig.Law § 7–301 (McKinney 1989). Accordingly, judgment against Aetna will be entered for $25,775,933.00, the principal amount of the jury's verdict, plus $6,024,067.00 of Trinity's prejudgment interest, that is, for the amount of the jury's principal verdict plus so much of Trinity's prejudgment interest as when added to the principal amount equals the amount of Aetna's bond, or a total of $31.8 million.

The same statute that limits Aetna's liability for Trinity's prejudgment interest subjects it to unlimited liability for interest stemming from its own default. *See U.S. Capital Ins. Co. v. Buffalo & Erie County Regional Development Corp.,* 177 A.D.2d 949, 578 N.Y.S.2d 307, 308 (4th Dep't 1991). Under the facts of this case, however, no such liability attaches, because no default by Aetna has been shown.[15]

Morse/Diesel's own authorities establish that under New York law, a surety is

---

**15.** Morse/Diesel's interpretation of the jury's verdict as finding Aetna in default on October 1, 1985 is incorrect. The jury, which was instructed that Aetna's liability was coextensive with Trinity's, never considered the question of whether or when Aetna independently breached its surety contract. Moreover, assuming *arguendo* that the jury's verdict does reflect consideration of that issue, Aetna, as noted above, preserved an objection as to allowing the jury to find it liable for any amount over $31.8 million. Thus, the issue is subject to review.

not considered in default until it has been notified of a default by its principal and unjustly withholds payment due under its bond. *Tuzzeo v. American Bonding Co.*, 226 N.Y. 171, 123 N.E. 142, 144 (1919). *See also Stuyvesant Insurance Co. v. Dean Construction Co.*, 254 F.Supp. 102 (S.D.N.Y.1966). The element of unjust withholding is plain in several of the cases plaintiff cites. In *Town of Clarkstown v. North River Ins. Co.*, 803 F.Supp. 827, 830 (S.D.N.Y.1992) and *Insurance Co. of North America v. United States*, 951 F.2d 1244 (Fed.Cir.1991), for example, sureties were held to have been in default on their performance bonds on the date they received notice of the termination of their principals' contracts. Assuming the performance bonds in those cases were of the standard variety, the sureties became obligated to pay completion costs upon receiving such notice and were unjustified in failing to do so. Similarly, in *Greenblatt v. Delta Plumbing & Heating Corp.*, 849 F.Supp. 247 (S.D.N.Y.1994), a surety was held to have been in default on a bond guaranteeing benefit contributions owed by its principal as of the date it received notice of the principal's delinquency on a specified sum and a demand for payment.

This case is distinguishable from all of those because Morse/Diesel has failed to establish a date prior to the verdict when Aetna was aware of, and wrongfully ignored, a mature obligation to pay. Unlike the obligees in *Town of Clarkstown* and *Insurance Co. of North America*, Morse/Diesel never unequivocally terminated its principal's contract and demanded payment on the bond. Also, unlike the situations in *Stuyvesant Insurance Co.* and *Tuzzeo*, Aetna was not in a position to pay a sum certain into court in an interpleader action. Here, Morse/Diesel allowed Trinity to continue working on the project and provided Trinity with notice that Trinity's delays were causing additional unspecified expense, for which Morse/Diesel would hold Trinity accountable. Contemporaneously, Morse/Diesel sent Aetna copies of these notices, a fact Morse/Diesel claims establishes that Aetna had notice of Trinity's

default. Morse/Diesel fails, however, to make clear what action Aetna should reasonably have taken upon receiving such notice.[16] Insofar as Trinity had not been terminated, Aetna could not have unilaterally cured Trinity's alleged infirmities. Moreover, because the notice to Aetna neither demanded payment nor set forth any specific amount due, Aetna did not act unreasonably in not remitting any funds. Overall, in the specific circumstances of the case, I find that no default on the part of Aetna has been shown.

In holding that Morse/Diesel has failed to establish a default on the part of Aetna, I do not find, as Aetna would urge, that a surety cannot be held in default until the amount of its liability has been fixed. Nor do I mean to say that a surety cannot be held in default prior to receiving a demand for payment. Rather, my conclusion, limited to the facts of this case, is that the uncertain status of the relationship between Morse/Diesel and Trinity and the uncertain amount of Aetna's liability prevented Aetna's bond obligations from maturing prior to the verdict of the jury in this case. Accordingly, judgment against Aetna will not exceed the amount of its bond.

## B. *Attorneys' Fees and Costs*

New York law plainly allows parties to agree by contract that in the event of litigation between them, the prevailing party may recover from the other attorneys' fees and related costs expended in the prosecution of the suit. *Durante Bros. Const. Corp. v. College Point Sports Ass'n, Inc.*, 615 N.Y.S.2d 455 (2d Dep't 1994); *Barba v. Lindissimo Boutique, Inc.*, 149 Misc.2d 117, 564 N.Y.S.2d 698 (Sup.Ct.Queens Co.1991). Morse/Diesel maintains that such an agreement is reflected in the Trinity–Morse Diesel Subcontract and, on the basis of that agreement, seeks to recover its costs and fees incurred in this action. It identifies two Subcontract provisions, Art. 11.4 of the Subcontract itself and Art. 9 of the Subcontract's General Conditions, as supporting a costs and fees

---

**16.** I make no finding as to whether or not the notice received by Aetna constituted a legal declaration of default, nor do I address the question of whether a declaration of default was a precursor to Aetna's liability.

award.[17] The defendants, as before, raise numerous objections.

### 1. Trinity

#### a. Morse/Diesel Failed to Plead for Attorneys' Fees and Costs and, Therefore, May Not Recover Them

 Trinity contends that Morse/Diesel did not demand attorneys' fees and costs in its pleadings and is, consequently, barred from recovering those damages by Fed. R.Civ.P. 9(g). Rule 9(g) does provide that "[w]hen items of special damages are claimed, they shall be specifically stated." Nonetheless, Trinity's argument is without merit. First of all, Morse/Diesel did at least arguably plead for fees and costs; the prayer for relief in its Amended Complaint includes a demand for costs. Secondly, even assuming *arguendo* that Morse/Diesel never previously demanded fees and costs, it may do so now for the first time. Fed.R.Civ.P. 54(c) provides, in pertinent part:

> [E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

"Courts have interpreted this rule to permit requests for attorney's fees raised for the first time post trial where such late request did not prejudice opposing parties." *Marshall v. New Kids on the Block Partnership*, No. 91 Civ. 3905 (RPP), 1993 WL 350063, at *1, 1993 U.S.Dist.Lexis 12395, at *3

(S.D.N.Y. Sept. 3, 1993). *See also Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1240 (5th Cir.1984). Trinity claims no prejudice from Morse/Diesel's allegedly late demand. Nor is it apparent to me where any such prejudice might lie. Trinity does not and cannot credibly claim to have been unaware that Morse/Diesel would seek costs and fees in the event it prevailed. *See Marshall, supra; Seybold v. Dean*, 628 F.Supp. 912, 915 (W.D.Pa.1986); *see also* Trinity Memorandum of Law with Respect to Recoverability of Attorneys' Fees dated March 31, 1994. Moreover, it has had a full and fair opportunity to be heard on the issue in these proceedings, including an opportunity to review Morse/Diesel's counsel's backup records, Wang 7/1/94 Aff., ¶ 28, which Trinity's counsel did not take advantage of. Morse/Diesel Reply Memorandum dated August 30, 1994 at p. 29. Accordingly, I find Morse/Diesel's claim for costs and fees timely.

#### b. The Question of Morse/Diesel's Entitlement to Attorneys' Fees Should Have Been Decided by the Jury

 In *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306 (2d Cir.1993), the Court of Appeals recently declared that

> when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees.

---

17. Art. 11.4 provides, in part:

The Subcontractor shall pay, immediately upon demand therefor, all costs, losses, damages and expenses, including, without limitation, ... all administrative, management, overhead and other direct or indirect expenses, including reasonable attorneys' fees (the 'Costs') incurred by the Contractor in connection with any default by Subcontractor or exercise of any right or remedy upon Subcontractor's default.

Art. 9 provides, in part:

To the extent permitted by law, each subcontractor shall indemnify, defend, save and hold each of the members of the Owner's Group ... their respective partners, officers, employees and anyone else acting for or on behalf of any of them harmless from and against all liability, damage, loss, claims, demands and actions of any nature whatsoever which arise out of or are connected with, or are claimed to arise out

of or be connected with: (1) The performance of work by the Subcontractor, or any act or omission of subcontractor.... The subcontractor shall bear any expense, whether incurred or paid of any members of the Owner's Group because of any claim or other matter indemnified against hereunder, including reasonable attorneys' fees and Court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or lawsuit arising therefrom is groundless, false or fraudulent.

As between the two provisions, I rely on Art. 11.4 as a basis to award Morse/Diesel its costs and fees. Art. 9 seems geared to the recovery of expenses incurred in the defense of claims asserted by parties other than the liable subcontractor. *See, e.g., Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989).

1 F.3d at 1313. Relying on this statement, Trinity contends that Morse/Diesel's failure to place the question of its entitlement to attorneys' fees before the jury prevents such a recovery. However, giving full effect to the plain meaning of *McGuire,* it does not compel that conclusion. The case merely holds that factual issues relating to a party's entitlement to fees—like all other factual issues—must be decided by the finder of fact. Here, that was done. The Trinity–Morse/Diesel Subcontract clearly provides that Morse/Diesel is entitled to recover fees should it prevail in any litigation with Trinity concerning the latter's default under the Subcontract.[18] The sole factual issue relating to an attorneys' fees award is the question of whether Trinity defaulted under the Subcontract. The jury considered that question and answered in the affirmative. Consequently, *McGuire* poses no barrier to a recovery of costs and fees.

c. Because Morse/Diesel's Legal Fees Were Paid by Another Entity, They Are Not Recoverable Under the Contract

■ It is undisputed that, pursuant to a liquidation agreement, Morse/Diesel's legal fees in this action were paid by the owner of the hotel. Insofar as the fees were not paid by Morse/Diesel, Trinity contends, they are not recoverable under the Subcontract. The Subcontract, however, contains no provision stating that only fees "paid" by Morse/Diesel are recoverable. Rather, the Subcontract provides, in Art. 11.4, for the recovery of all fees "incurred" by Morse/Diesel. "Paid" and "incurred" are not synonymous. The former means "[t]o give money to in return for goods or services rendered," while the latter means "[t]o become liable or subject to." *American Heritage Dictionary,* at 653, 911 (2d College ed. 1985).[19] As this Court has recognized, a party "incurs" legal fees when services are rendered for which the party is

liable to pay. *Waltuch v. Conticommodity Services, Inc.,* 833 F.Supp. 302, 315–316 (S.D.N.Y.1993). By that definition, Morse/Diesel's fees are recoverable. For though the fees were actually paid by the Hotel's owner, Morse/Diesel was among the parties to retain plaintiff's counsel, Plaintiff's Exh. 30, and would have been liable for its fees had the owner refused to pay.[20]

d. Morse/Diesel's Expert Fees are Not Recoverable

■ Arguing from the premise that experts' fees are distinct from attorneys' fees, Trinity maintains that even if the Subcontract allows for recovery of the latter, it may not provide a basis for recovery of the former without express language to that effect. Morse/Diesel responds, quite correctly, that the language of the Subcontract does make experts' fees recoverable. Art. 11.4 is broad and all-encompassing. It allows not merely for the recovery of attorneys' fees, but of "*all* costs, losses, damages, and expenses." (emphasis added). Clearly, experts' fees reasonably incurred in connection with this litigation fall within that description.

e. Morse/Diesel's Documentation in Support of Its Claim for Fees and Costs is Inadequate as a Matter of Law

In support of its application for fees and costs, Morse/Diesel has submitted invoices from its attorneys and experts and summaries of its attorneys' charges prepared by the attorneys themselves. Trinity asserts that these are inadequate and claims that only contemporaneously-prepared time records demonstrating the nature of the work done and the hours expended are acceptable. It relies for this proposition on the authority of *New York State Ass'n for Retarded Child., Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir. 1983), wherein such a requirement was in-

---

**18.** Trinity raises no serious factual challenge to the meaning of the Subcontract in that regard. Its objections to the propriety of a fee award are all either matters of law or concern the amount of fees to be awarded.

**19.** The Subcontract itself reflects the distinction in Article 9, wherein it provides for the recovery of losses "incurred or paid."

**20.** As a separate basis to support the award of fees paid by the Owner, I refer back to the discussion above of liquidation agreements. Insofar as Morse/Diesel was asserting pass-through claims on behalf of the owner (which it was to a substantial degree), attorneys' fees are recoverable on those claims for the same reasons prejudgment interest was.

deed announced. *Carey*, however, concerned a claim for fees under a federal statute. Courts have recognized that it is not applicable to diversity cases, where entitlement to fees is governed by state law. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987); *Banca Della Svizzera Italiana v. Cohen*, 756 F.Supp. 805, 808–809 (S.D.N.Y.1991). This is not to say that fee applications in diversity cases should not be carefully scrutinized. However, the guidelines for such scrutiny are determined by the law of New York.

### 2. Aetna

Pursuant to Section 7–301 of New York's General Obligations Law, the judgment against Aetna in this case may not include Morse/Diesel's attorneys' fees. Section 7–301 limits a surety's liability on a bond to the amount of the bond.[21] Aetna's exposure, therefore, is capped at $31.8 million, and it has already been held liable for that amount on the jury's principal verdict and Trinity's prejudgment interest.

### 3. The Reasonableness of Morse/Diesel's Costs and Fees

The Court of Appeals has found that under New York law, a court faced with a fee request must make its own determination whether the request is justified by the time and labor expended. *F.H. Krear*, 810 F.2d 1250 at 1265. The Court of Appeals also noted:

"A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.' *In re Schaich*, 55

A.D.2d 914, 914, 391 N.Y.S.2d 135, 136 (2d Dep't), *appeal denied*, 42 N.Y.S.2d 802, 397 N.Y.S.2d 1026, 366 N.E.2d 293 (1977)." *Id.* at 1263. See also, *Banca Della*, 756 F.Supp. 805, 808 (court should also consider the legal market in which the services were rendered and the benefits achieved for the client).

Here, plaintiff's counsel has provided two types of documentation as evidence of its fees. For services rendered from 1991 through the trial of this action, counsel has presented contemporaneous invoices setting forth charges for attorney time and disbursements. Wang 7/1/94 Aff., Ex. F. For services rendered earlier than 1991, counsel has offered a monthly summary of attorney hours and disbursements prepared specially for this fee application. *Id.*, Ex. E. Counsel explains that prior to 1991, the firm was handling several matters for Morse/Diesel and did not segregate the charges for each matter in its bills. Accordingly, counsel explains, the bills for prior to 1991 were analyzed to determine which of the charges for those years were applicable to this case. Where there was any doubt or where an entry covered services in this and other Morse/Diesel actions, the entire charge was excluded. Wang 7/1/94 Aff., ¶ 28. Similarly, expenses not specifically identified as related to this action were excluded. *Id.* Counsel stated that the rates charged were those charged to the firm's clients generally, *id.* at ¶ 29, and that the charges were "fair and reasonable and, with respect to the persons for whom such charges were rendered, considering their qualifications and experience, in line with time charges in the New York area for persons of comparable background and experience." *Id.* at ¶ 30.[22]

Counsel also notes that all time charges up to the time of his affidavit had been paid on an ongoing basis but for the most recently-rendered invoice. *Id.* at ¶ 26. Additional

**21.** As noted above, the sole exception to the statute is that prejudgment interest accruing from the date of any default by the surety on its payment obligation may be awarded without limit.

**22.** Plaintiff does not seek reimbursement for the fees of Hynes, Diamond & Reidy, which Fried-

man, Wang & Bleiberg succeeded in 1986 or for the fees of two other attorneys who assisted in pretrial activity. Wang 7/1/94 Aff., p. 8, n. 1. Plaintiff also does not seek fees for time spent in preparing the motion seeking reimbursement of attorneys' fees. Morse/Diesel Reply Memorandum dated August 30, 1994 at p. 33, n. 35.

back-up was offered to opposing counsel and the Court as deemed appropriate. *Id.* at ¶ 28. Trinity has not indicated any desire to review such back-up. Morse/Diesel Reply Memorandum dated August 30, 1994 at p. 29. Trinity also does not dispute the reasonableness of the fees other than to assert generally—in a single page—that the fees were "patently 'inequitable and unreasonable'", the hourly rates were "luxuriously high" and that counsel did not achieve total victory, *i.e.,* recovery of all damages demanded. Trinity Memorandum dated August 11, 1994 at pp. 29–30.

In determining the reasonableness of the counsel fees and expenses sought, I have carefully reviewed the docket sheet in this ten-year old litigation. During the time the case was assigned to me, including a serious settlement conference at which both sides presented voluminous materials, I became aware of the great length and vast scope of discovery undertaken—discovery which was appropriate to the complexity of the case and which was closely and ably supervised by Magistrate Judge Roberts. I have also become familiar with the complexity of the issues, the tenacity and experience of counsel on both sides and I am aware of relevant rates in the New York legal community. The benefit obtained for plaintiff—a jury award of almost $26 million out of $37 million damages sought—speaks for itself. Thus, I am fully able to "evaluate, without contemporaneous documentation, whether the hours [spent by plaintiff's counsel] were 'appropriate for the scope and complexity of the particular litigation'"; *Fustok v. Conticommodity Services, Inc.,* 122 F.R.D. 151, 158, n. 16 (S.D.N.Y.1989), *aff'd,* 873 F.2d 38 (2d Cir. 1989). I find that the hours spent and the fees and expenses charged by counsel are reasonable.[23]

Similarly, I have been in a position to observe the high quality of the expert testimony, graphics, and summary evidence presented at trial by plaintiff to illuminate the obviously complex issues involved. Based on all of the considerations noted above and, in addition, on the fact that the trial testimony and exhibits demonstrate that Trinity paid its experts in comparable disciplines more than the amounts sought by plaintiff, *e.g.,* Wang Aff. ¶¶ 35, 37, 39, 41, I find the fees and expenses sought by plaintiff on account of its experts to be reasonable. Accordingly, plaintiff may recover attorneys' fees and related expenses in the following amounts:

a. For the services of Friedman, Wang & Bleiberg, P.C., fees in the amount of $4,341,209.33 and expenses in the amount of $519,618.14;

b. For the services of Both, Belle, Robb Ltd., fees and expenses in the amount of $1,197,508.80;

c. For the services of Leslie E. Robertson Associates, fees and expenses in the amount of $241,649.99;

d. For the services of Borek, Stockel & Marden, fees and expenses in the amount of $62,535.57; and

e. For the services of Failure Analysis Associates, the amount of $142,915.73.

### III. *Motion to Stay Execution*

The Federal Rules set forth specific, time-limited procedures for a litigant to follow in order to appeal a judgment, and, if the party chooses, to stay execution of that judgment. In order to appeal in a timely fashion, the notice of appeal must be filed within thirty days from the entry of judgment. Fed.R.App.P. 4(a)(1). During the first ten of these thirty days, execution of the judgment is automatically stayed. Fed.R.Civ.P. 62(a). In order to stay the execution of the judg-

23. Trinity, on the basis of *Carrero v. New York City Housing Auth.,* 685 F.Supp. 904, 909 (S.D.N.Y.1988), *modified,* 890 F.2d 569 (2d Cir. 1989), maintains that disbursements for counsel's expenses for things like telephone service and word processing are not recoverable. As with *Carey, Carrero* concerned fees awarded under a federal statute and has no applicability to the present situation. *See Solow v. Kioi Real Estate Company, Ltd.,* No. 92 Civ. 7526 (SS), 1994 WL 39030, at *2 (S.D.N.Y. Feb. 9, 1994). Although no case formally awarding such expenses has been located, I am well aware that such charges are ordinarily and routinely billed to clients in the New York legal community, that clients ordinarily and routinely pay for such charges and that recovery of such charges is ordinarily and routinely sanctioned by judges in that community.

**182**

ment beyond this initial ten-day period, the litigant must post a supersedeas bond. Fed. R.Civ.P. 62(d).

Defendants have requested that I extend the ten-day period mandated by Fed.R.Civ. Pro. 62(a) by twenty days, so that defendants would have thirty days within which to file their supersedeas bond. The reason defendants urge me to ignore the clear dictates of the Federal Rules is simply that they wish the timing for the posting of the supersedeas bond to coincide with the thirty days within which they may file their notice of appeal.

Defendants have not cited any cases in support of their motion. Moreover, I cannot ignore the dictates of, for example, *United States v. One 1962 Ford Galaxie Sedan,* where, noting the "comprehensive" nature of the Federal Rules, the court refused to extend the ten-day stay of execution of the final judgment where the stay had expired and no notice of appeal had been filed. 41 F.R.D. 156, 157 (S.D.N.Y.1966). In so doing, the court stated, "[t]he presence of such explicit protection and coverage ... precludes the existence of such power in time periods not covered by the Rules." *Id. See, also, Geddes v. United Financial Group,* 559 F.2d 557, 560–61 (9th Cir.1977); *Long v. Continental Divide Elec. Co-op.,* 117 N.M. 543, 873 P.2d 289, 290 (App.1994).

Defendants have also failed to make an adequate factual showing in support of their motion. *See, e.g., McKenzie v. Kennickell,* 669 F.Supp. 529, 535 (D.D.C.1987) (denying the government's request for a sixty-day stay in execution of judgment where the government had not "offered any good reason why it should be granted greater protections than those provided under the federal rules...."). As plaintiff points out, defendants have failed to offer any affidavits in support of their assertions that the relief sought "would afford Defendants sufficient time" to post a supersedeas bond without risking "exposure after ten (10) days to efforts by Morse/Diesel to levy upon their assets". Defendants' Memorandum regarding stay of execution ("Defs.Mem.") at 2–3. In short, defendants have not explained sufficiently why they need twenty additional days to obtain a bond. Defendants' request is undercut by the facts

that (i) entry of judgment at this point in time comes as a surprise to no one since the jury rendered its verdict in May, 1994, and defendants have been on notice of plaintiff's motion for entry of judgment since July, 1994; (ii) defendants claim, without affidavits, that their ability to pay the judgment will be unchanged during the requested twenty-day period Defs.Mem. at 3; and (iii) defendant Aetna is itself a bonding company.

Defendants' request for an extension in the stay of execution of judgment is, accordingly, denied.

### CONCLUSION

Aetna's motion for a new trial is denied.

Morse/Diesel's motion for the entry of judgment is granted to the extent indicated above. Counsel shall submit a form of judgment.

Defendants' motion for a stay of execution is denied.

SO ORDERED.