OPINION OF THE COURT
Fuchsberg, J.
This action for breach of a construction contract addresses the circumstances in which a mathematically stated rule, such as the so-called "Eichleay formula”,[1] may be applied to determine the amount of home office overhead, if any, which may be included in arriving at a contractor’s delay damages.
Plaintiff, Berley Industries, was the heating, ventilating, and air conditioning contractor for a combined 48th precinct police station and firehouse then being constructed by the City of New York. The contract price was in excess of $472,000. It is conceded that, for causes attributable to the city, plaintiff was unable to start on this project for many months after it received notice to proceed. As a result, some of its work was not completed until 355 days after the two years stipulated in the agreement had gone by. At the two-year mark, as measured in monetary terms, Berley had completed 87% of its undertaking, leaving only approximately $60,000 worth left to be done. It should also be noted that this was but one of 11 construction contracts aggregating over $5,800,000 which plaintiff was engaged in performing at the same time.
Berley’s suit, inter alia, sought damages for increased home office overhead expenses during the period of the overrun; *686 presumably, to the extent of all but that represented by the final $60,000, it had already been compensated for its regular overhead expenses by the very terms of its contract with the city. At trial, the sole proof it introduced to establish the increase took the form of testimony by its Comptroller. This witness, who had not been in Berley’s employ at the time the contract was fulfilled and had no personal knowledge of the facts, calculated the increase in home office overhead at $19,262. He did so solely by applying an arithmetical procedure which he claimed he had developed, but which counsel later referred to as the "Eichleay formula”. It consisted of no more than the use of Berley’s total billings during the period as a denominator of a fraction of which the billings for the 48th Street precinct was the numerator, the multiplication of that fraction by Berley’s total home office expenses for the same period, the division of the sum so produced by the number of days involved in the period and, finally, treating the result as though it were the daily additional overhead for 48th Street, multiplication of it by the 355-day overrun.[2]He provided no substantiation that even a single penny’s increase in overhead beyond what the rest of the plaintiff’s business would in any event have required had in fact been incurred.
Over objection, Trial Term submitted the Comptroller’s formula and calculations to the jury, which returned a verdict in Berley’s favor. The judgment entered thereon was affirmed by a divided Appellate Division, but only on constraint of its prior decision in Mars Assoc. v Board of Educ. (53 AD2d 532). The ensuing analysis persuades us that its order should be reversed.
 It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered (e.g., Haughey v Belmont Quadrangle Drilling Corp., 284 NY 136; Palsgraf v Long Is. R. R. Co., 248 NY 339). Delay damages, including ones in overhead, are no *687 exception. A contractor wrongfully delayed by its employer must establish the extent to which its costs were increased by the improper acts because its recovery will be limited to damages actually sustained (Uvalde Asphalt Paving Co. v New York, 196 App Div 740, 762; Encyclopedia, New York Law, Damages, § 565, pp 20-21). Speculation or conjecture will not suffice (25 Fifth Ave. Mgt. Co. v Ivor B. Clark, Inc., 280 App Div 205, affd 304 NY 808; Restatement, Contracts, § 331; 13 NY Jur Damages, § 16).
Particularly in actions ex contractu, however, when it is clear that some injury has been occasioned, recovery will not necessarily be denied a plaintiff when it is apparent that the quantum of damage is unavoidably uncertain, beset by complexity or difficult to ascertain (cf. Reynolds Securities v Underwriters Bank & Trust Co., 44 NY2d 568; Matter of Rothko, 43 NY2d 305; Bigelow v RKO Radio Pictures, 327 US 251). The law is realistic enough to bend to necessity in such cases. A jury then may draw reasonable inferences from the other, though lesser, proofs actually presented in order to arrive at an estimate of the amount of extra costs which are the natural and probable result of the delay (Jones Co. v Burke, 306 NY 172; Dunkel v McDonald, 272 App Div 267, affd 298 NY 586). Even then, there must be a definite and logical connection between what is proved and the damages a jury is asked to find (see Dunkel v McDonald, supra; 13 NY Jur Damages, § 16, p 441).
It is relevant to the application of these principles that, in the case before us now, any increase in home office overhead was not merely hard to measure, but was lacking altogether. True, unlike job site overhead increases whose relationship to a particular job will usually be capable of direct proof, the connection between home office overhead increases and delay in a particular project will more often be indirect. But because proof is indirect does not mean it does not exist. Here there was no showing that the delay caused an increase in home office activity or expense of any kind. So far as the record shows, all expenditures for office overhead may have been completed when the 87% level was reached. Nor was there any showing that this was a case where the delay precipitated, or was precipitated by, engineering or design problems that call for central staff consideration. Above all, there was no claim by the plaintiff that proof was not available. It fell back, instead, on the formula it put forth through the Comptroller.
*688 The mathematical formula did not fill the void. At not a single point in the equation which it set up was there a component which represented an actual item of increased costs, whether attributable to the delay on the city’s job or not. The computation it essayed was therefore no less speculative because it was cast in a mathematical milieu. And, insofar as it was offered as a substitute for direct evidence of overhead damage, there was no accompanying foundation from which it could be found that, because of the character of Berley’s business, increased overhead attributable to delay was impossible of proof without the aid of the formula. Nor was there any attempt to prove that the formula was logically calculated to produce a fair estimate of actual damages. Absent these preconditions, it was but an unsupported opinion. It did not serve to expand Berley’s ability to recover any more than the reasonable value of any additional home office expenses it might have been able to prove by other means.
In rejecting the formula we, of course, are aware of the fact that, under the Eichleay nomenclature, it has been applied in a series of home office cases, which for the most part accept the formula largely without analysis and almost as a matter of administrative convenience (e.g., Luria Bros. & Co. v United States, 369 F2d 701 [US Court of Claims; FBI audit in advance of trial accepted pursuant to stipulation between parties]; Hedin Constr. Co. v United States, 347 F2d 235 [US Court of Claims; Government did not challenge commissioner’s figure]).
The case before us readily reveals how the mechanical imposition of a formula akin to the one advanced by the plaintiff can all too easily bring a harsh daily penalty when only compensatory damages are warranted or even when the doctrine of damnum absque injuria is in order. For all practical purposes, it would completely ignore the safeguards against overreaching and arbitrariness to which the law of evidence has long been committed. As Justice (now Presiding Justice) Murphy pointed out in his dissent below, "The damages computed under the 'Eichleay formula’ would be the same in this case whether the plaintiff had completed only 1% or 99% of the job on the scheduled completion date of May 7, 1971. This rather bizarre result is caused by the fact that the 'Eichleay formula’ focuses on the length of the delay to the exclusion of many other important factors bearing on actual damages. If, on May 7, 1971, the plaintiff was merely required to spend $100 to complete the job, the 'Eichleay formula’ *689 would still require that the defendant pay $19,262 for the 335-day delay * * * I can only conclude that the mathematical computations under the 'Eichleay formula’ produce a figure with, at best, a chance relationship to actual damages, and at worst, no relationship at all”. Neither at argument nor in its brief did plaintiff deny the implications of this critique.
Nor is this all. Assuming there had been proof of increased home office expenses in this case, the formula here would have distorted them. Only $60,000 of work was to be performed during the overrun time. Yet, in the fixing of its proportion of any assumed increase, the formula would be asking the city to bear not just a share based on the mathematical relationship between that sum and the plaintiff’s total billings during the period of protraction. It would also be burdened with a sum based on the 87% of the $472,000 contract which had not been delayed and, consequently, did not reflect work to be performed during this period. The failure to recognize the distinction between the 87% already performed and the 13% remaining to be performed would multiply the amount of the damages.
The reach of the hypothetical damages which the formula would generate is also demonstrated by the present case. The $19,262 which the Comptroller arrived at as the city’s share of "increased” home office overhead here was more than all other damages found for the delay, including the costs of materials and labor at the job site where the balance of the contract was actually fulfilled.[3]
Accordingly, since it was error to submit the Comptroller’s formula to the jury, the order of the Appellate Division should be reversed and the case remitted to the trial court for a new trial limited to the issue of delay damages.

. From Eichleay Corp. ([CCH] 60-2 BCA, par 2688).

. The steps in this process may be restated as follows:
1. Billings for this Contract X Total Overhead for Period = Allocable Overhead
Total Billings for Period
2. Allocable Overhead = Daily Contract Overhead
Days of Performance
3. Daily Overhead X No. of Days Delay = Overhead Claimed
The applicable figures were:
1. $473,071 X $568,352 = $46,342 2. $46,342 = $57.50 3. $57.50 X 335 = $19,262
5,801,952 806

. The $19,262 was part of a larger claim for total delay damages in the amount of $45,-499 (inclusive of any job site overhead damage). Two nonoverhead items in the amount of $5,649 and $2,223 having been withdrawn from that total, the net claim was for $37,627, leaving only $18,365 for all but the $19,262 home office overhead claim. (The total verdict was for $34,696.55.)