THIRD DEPARTMENT, MARCH, 1994

(March 3, 1994)

■ MID-STATE PRECAST SYSTEMS, INC., Respondent-Appellant, v CORBETTA CONSTRUCTION COMPANY, INC., et al., Appellants-Respondents. (And a Third-Party Action.) [608 NYS2d 546] — White, J. Cross appeals from a judgment of the Supreme Court (Harlem, J.) in favor of plaintiff, entered June 6, 1991 in Broome County, upon a decision of the court, without a jury.

The centerpiece of this appeal is the subcontract between plaintiff and defendant Corbetta Construction Company, Inc., the general contractor on the second phase of the construction of the 2.4 million square foot headquarters building for Union Carbide Corporation. Corbetta's responsibilities included the excavation of the foundation and the erection of the super-structure. Plaintiff's task was to manufacture precast concrete planks and to erect them on shoring Corbetta had put in place. The erection of the planks was slated to commence on November 1, 1978 and was to be completed within 12 months. The starting date was postponed to February 12, 1979 as the consequence of delay encountered when Union Carbide's engineers determined that unforeseen subsurface conditions made it necessary to pour the concrete foundation footings to a

much greater depth than originally anticipated. Due to unusual weather conditions, the starting date was further delayed to late March 1979. The postponement of the starting date led to an extension of the completion date to March 1980. Plaintiff, however, did not complete its performance until August 28, 1980.

Plaintiff commenced this action to recover funds retained by Corbetta, compensation for alleged delays and extra work, and a share of an equitable adjustment settlement received by Corbetta from Union Carbide to compensate it for the delay in the foundation work. Corbetta counterclaimed for, *inter alia,* compensation for delays caused by plaintiff and for allegedly substandard work. At the conclusion of an eight-week nonjury trial at which more than 1,000 exhibits were received into evidence, Supreme Court issued a comprehensive decision awarding plaintiff $750,762 on its claims and Corbetta $348,972 on its counterclaims. Plaintiff entered a $401,790 judgment and these cross appeals challenging various components of Supreme Court's awards ensued.

The first component challenged pertains to the equitable adjustment agreement between Corbetta and Union Carbide. Under this agreement, Corbetta received $6.1 million to compensate it for the extra costs it incurred in constructing the foundation. Plaintiff claims that it is entitled to a portion of this sum because $2 million was earmarked for the subcontractors and is being held in trust for their benefit.

Supreme Court found that the subcontractors who were delayed by the foundation problem were the intended beneficiaries of this fund and, pursuant to a formula it devised, awarded plaintiff a proportionate share of the fund which totaled $150,570. Defendants maintain that plaintiff was contractually not entitled to delay damages and, alternatively, that it did not establish its entitlement to such damages by competent proof.

Initially, we note that the broad "no damage for delay" clause contained in the subcontract is inapplicable to the equitable adjustment agreement because the delay caused by the foundation problem was not within the contemplation of the parties when they entered into the contract *(see, Corinno Civetta Constr. Corp. v City of New York,* 67 NY2d 297, 310). Assuming that Corbetta is holding these funds in trust, there is nothing in the agreement relieving the subcontractors from the obligation of establishing their claims. In fact, insofar as Corbetta's claim was concerned, Union Carbide had the right

to verify the accuracy of cost data supporting it and, if it was found to be inaccurate, to terminate the agreement.

A contractor wrongfully delayed by its employer must establish the extent to which its costs were increased by the improper acts because its recovery will be linked to damages actually sustained *(see, Berley Indus. v City of New York,* 45 NY2d 683, 687). While it is recognized that such damages are difficult to ascertain, there must be a definite and logical connection between what is proven and the damages sought to be recovered *(see, Scalamandre & Sons v Village Dock,* 187 AD2d 496, *lv denied* 81 NY2d 710). Customarily, such damages are calculated on a quantum meruit basis by adding an allowance for overhead and profit to the actual job costs less the amounts paid *(see, Whitmyer Bros. v State of New York,* 47 NY2d 960, 962). In this instance, plaintiff's proof consisted of a letter wherein it stated that it had sustained damages of $1,065,982 from the start of the contract to August 31, 1980. In our opinion, because this letter was presented without supporting documentation or verification and consists primarily of plaintiff's estimates of its increased costs, it does not constitute adequate proof of damages because estimates are subjective as well as speculative *(see, Kenford Co. v County of Erie,* 67 NY2d 257, 261). Accordingly, Supreme Court should not have relied on this proof and should not have awarded plaintiff a share of the equitable adjustment award.

The next point of contention is Supreme Court's award of $48,000 in liquidated damages to plaintiff. This award was predicated upon the clause in the subcontract which provided that, in the event the erection of the planking was extended beyond 12 months due to the fact that 50,000 square feet of shoring was not available on a weekly basis, the price paid plaintiff would increase "in the amount of $24,000 per month, for each month beyond the total twelve month period caused by interruptions of less than two weeks duration". Supreme Court found that plaintiff was delayed two months, attributing 1½ months to the foundation problem and 1/2 month to shoring delays.

When claims are made for damages for delay, a plaintiff must show, *inter alia,* that the defendant was responsible for the delay and that the delays caused delay in completion of the contract *(see, Manshul Constr. Corp. v Dormitory Auth.,* 79 AD2d 383, 387). As it is clear that the foundation problem was caused by Union Carbide, Corbetta cannot be charged with that delay *(see, Triangle Sheet Metal Works v Merritt & Co.,* 79 NY2d 801). Thus, the issue distills to whether plaintiff is

entitled to be compensated for the 1/2-month shoring delay. To resolve this issue we must ascertain the intent of the parties as set forth in the language they utilized in the subcontract *(see, Slatt v Slatt,* 64 NY2d 966, 967). In our view, the fact that the parties only provided for an increase in price for each month of delay, without any mention of shorter periods of delay, clearly evinces their intent to limit compensation to delays which caused a full month extension of the work *(see,* General Construction Law § 31). Accordingly, we find that plaintiff is not entitled to an award of liquidated damages for a 1/2-month delay.

Lastly, with respect to the awards to plaintiff, we concur with defendants that Supreme Court's award for change orders must be reduced to $11,189 to reflect credits to Corbetta for two change orders issued by plaintiff.

We now turn to Corbetta's claim for delay damages premised on its allegation that plaintiff was responsible for 22 weeks of delay running from February 13, 1980 to July 11, 1980. Supreme Court agreed that plaintiff was responsible for delays but pointed out that every party involved in this project contributed to its late completion. The court further pointed out that there was no precise evidence adduced showing that plaintiff was responsible for Corbetta's delay in completing the contract. Nevertheless, it felt that some period of time should be assessed against plaintiff. Consequently, it found that plaintiff was responsible for two weeks of delay.

To establish its damages, Corbetta produced an accountant who testified that the actual costs that Corbetta incurred as the result of the 22-week delay were $2,323,735. Supreme Court rejected this evidence, finding it so "outrageous * * * that it approaches an embarrassment". Rather than dismissing the claim, Supreme Court adopted the figures used by Corbetta in the settlement of its delay claim against Union Carbide and arrived at an award of $196,800.

We agree with Supreme Court's rejection of Corbetta's evidence of actual costs because its accountant did not relate those costs to the delay allegedly caused by plaintiff. Nor did he show that Corbetta had not already been paid for such costs, which is particularly important in view of its settlement with Union Carbide and the fact that its compensation under its contract with Union Carbide was increased from $25 million to $50 million. We disagree, however, with its adoption of the figures Corbetta used in its claim with Union Carbide because, as Corbetta concedes, they were merely estimates which bore no connection to the delay claim against plaintiff.

Therefore, we conclude that Corbetta's delay claim must be denied due to its failure to present sufficient evidence to establish delay damages *(see, Scalamandre & Sons v Village Dock,* 187 AD2d 496, *supra).*

When it considered Corbetta's claim for backcharges, Supreme Court disallowed three claims for the reason that the repair work was performed in excess of a year after plaintiff completed the subcontract. We find that Supreme Court misconstrued the evidence because the record shows that the repair work was done while plaintiff was on the job in February, March and April 1980. Therefore, because Supreme Court allowed backcharges for similar repair work that was performed in May and July 1980, we discern no reason not to allow these three claims which total $40,104. Hence, we will increase the backcharge award to Corbetta to $178,276.[1]

Our assessment of Corbetta's proof which it submitted in support of its concrete overrun claims coincides with Supreme Court's finding that it was speculative and uncertain. Therefore, we concur with the court's conclusion that Corbetta failed to sustain its burden of proof on this claim. At Corbetta's urging we have considered its separate claim concerning a 260-cubic yard concrete overrun. We find that this claim has not been substantiated as it was first presented 10 years after the completion of the contract and is not supported by any documentation created at the time that plaintiff's allegedly defective work was repaired, a situation which is highly unusual given the avalanche of documents this project generated.

At this point the last issue remaining extant on the appeal by defendant Aetna Casualty and Surety Company, Inc.[2] is its contention that it is not obligated to pay prejudgment interest. It is well settled that the liability of a surety cannot extend beyond the language of the contract *(see, Mendel-Mesick-Cohen-Architects v Peerless Ins. Co.,* 74 AD2d 712). Aetna's bond provides that a claimant "may sue on this bond [and] prosecute the suit to final judgment for such sum or sums as may be justly due [the] claimant". That interest is justly due plaintiff is established by CPLR 5001 (a), which provides that

---

1. We have declined to consider backcharge referred to by the parties as Invoice No. 7 because Corbetta has not shown to our satisfaction that it was received into evidence. Accordingly, the motion to strike Invoice No. 7 from the record on appeal is granted and the cross motions for sanctions, expenses and counsel fees denied.

2. Aetna issued a $25,028,000 labor and material payment bond to Corbetta.

interest is recoverable in a breach of contract action. Consequently, because the total amount of plaintiff's recovery with interest does not exceed the total amount of the bond, Supreme Court did not err in awarding plaintiff prejudgment interest against Aetna (see, 1 Williston, Contracts § 2:19, at 161 [Lord 4th ed]). Aetna's citation of General Obligations Law § 7-103 in support of its argument that a surety does not become obligated to pay interest until it has defaulted on its undertaking is misplaced because that statute is applicable only when the interest awarded exceeds the amount of the bond (see, 63 NY Jur 2d, Guaranty and Suretyship, § 412).

CPLR 5001 (b) provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed". Given the fact that the award to plaintiff essentially represents the final payment due under the contract, and as the contract states that the final payment to plaintiff was payable when Corbetta received its final payment from Union Carbide, it is our opinion that interest should run from that date. Due to the fact that this date does not appear in the record, we shall remit this matter to Supreme Court for the determination of this issue.

We have examined the parties' other contentions and find them to be without merit.

To conclude, we find that plaintiff is entitled to the following awards on its claims:

| | |
|---|---|
| Retainage | $530,697 |
| Change orders | 11,189 |
| Erection delay | 0 |
| Equitable adjustment | 0 |
| TOTAL | $541,886 |

Corbetta's awards are:

| | |
|---|---|
| Delay | 0 |
| Back charge | $178,276 |
| Attorney's fee | 15,000 |
| Concrete overruns | 0 |
| TOTAL | $193,276 |

The difference between the two awards is $348,610 in plaintiff's favor.

Mikoll, J. P., Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law and the facts, with costs, by reducing plaintiff's total award to $541,886, reducing the total award of defendant Corbetta Construction Corporation, Inc. to $193,276, directing plaintiff's total judg-

ment to be $348,610 with interest from the date of Union Carbide Corporation's final payment to defendant Aetna Casualty and Surety Company, Inc.; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.