**ESPN, INC., Plaintiff,**

v.

**OFFICE OF THE COMMISSIONER OF BASEBALL, Defendant.**

**No. 99 Civ. 3225(SAS).**

United States District Court,
S.D. New York.

Nov. 30, 1999.

---

Eric J. Lobenfeld, Robert A. Schwinger, Jonathan M. Sobel, Chadbourne & Parke LLP, New York City, for Plaintiff ESPN.

Robert J. Kheel, Willkie Farr & Gallagher, New York City, Robert A. DuPuy, Foley & Lardner, Milwaukee, WI, for Defendant Baseball.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

On October 15, 1999, ESPN, Inc. ("ESPN") and the Office of the Commis-

sioner of Baseball ("Baseball") moved in limine to preclude the admission of certain evidence and argument at their forthcoming trial. Ten separate motions—five by ESPN and five by Baseball—were fully submitted on October 29, 1999. Six of the motions were resolved by opinion dated November 22, 1999. Three of the motions were resolved from the bench during a hearing on November 23, 1999. The final motion, ESPN's motion in limine to preclude damages evidence, is the subject of this Opinion and Order.

### I. ESPN's Motion in Limine to Preclude Damages Evidence

In my November 22 opinion, I ruled that ESPN breached its 1996 telecasting agreement ("1996 Agreement") with Baseball when it preempted six baseball games scheduled for Sunday nights in September 1998 and September 1999 without the prior written approval of Baseball. *See ESPN, Inc. v. Office of Commissioner of Baseball*, 1999 WL 1063241, 99 Civ. 3225, slip op. at 38–39 (S.D.N.Y. Nov. 23, 1999).[1] ESPN broadcast NFL football games rather than the previously scheduled baseball games on those six nights.

Baseball claims that it has been damaged in an amount "believed to exceed millions of dollars" as a result of ESPN's breach of the 1996 Agreement. *See* Baseball's Objections and Responses to ESPN's First Set of Interrogatories, Ex. A to 10/15/99 Affidavit of Eric J. Lobenfeld, counsel for ESPN, in Support of Motion to Preclude Damages Evidence ("Lobenfeld Aff."), at 7. Baseball attributes its damages to an alleged loss of:

(1) national television exposure;

(2) promotional opportunities and ratings;

(3) value of the "Sunday Night Baseball" television package;

---

**1.** The facts of the case are set forth in the November 23 opinion and will not be repeated here.

(4) prestige;

(5) potential sponsorships; and

(6) the future value of all of Baseball's national telecast packages

*Id.* at 7–8. Because Baseball received full payment from ESPN under the contract, it may only seek extra-contractual damages stemming from the six preemptions.

By its motion, ESPN seeks to preclude Baseball from introducing testimony or other evidence of its alleged monetary damages. ESPN contends that "there is no factual basis to support any claim for monetary damages arising from these perceived injuries, and that such claims are the product of speculation and guesswork." ESPN's Memorandum in Support of Its Motion in Limine to Preclude Damages Evidence ("ESPN MIL") at 2. Baseball argues that it has made the "requisite showing of damage" and therefore it is "entitled to have the opportunity to prove its damages at trial." Baseball's Response to Plaintiff's Motion to Preclude Damages ("BB Op.") at 10.

## II. Legal Standard

It is well-settled under New York law that

[a] plaintiff seeking· compensatory damages has the burden of proof and should present to the court a proper basis for ascertaining the damages [it] seeks to recover. They must be susceptible of ascertainment in some manner other than by mere conjecture or guesswork.

*Dunkel v. McDonald,* 272 A.D. 267, 70 N.Y.S.2d 653, 656 (1st Dep't 1947), *aff'd,* 298 N.Y. 586, 81 N.E.2d 323 (1948). *See also Contemporary Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 926 (2d Cir.1977) (finding that under New York law, "[w]hen the existence of damage is uncertain or speculative, the plaintiff is limited to the recovery of nominal damages"); *V.S. Int'l, S.A. v. Boyden World Corp.,* 862 F.Supp. 1188, 1197 (S.D.N.Y. 1994) ("[I]t is well-established under New

York law, that a plaintiff must prove the existence of damages with certainty in order to recover for breach of contract."). Although it is true that "[w]hen the existence of damage is certain, and the only uncertainty is as to its amount, the plaintiff will not be denied recovery of substantial damages," but even then the plaintiff must show "a stable foundation for a reasonable estimate" of damages. *Contemporary Mission, Inc.,* 557 F.2d at 926. *See also Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.,* 946 F.2d 1003, 1010 (2d Cir.1991) ("Although a party is not to be denied damages when they are necessarily uncertain, New York law does not countenance damage awards based on '[s]peculation or conjecture.'") (quoting *Berley Indus. v. City of New York,* 45 N.Y.2d 683, 687, 412 N.Y.S.2d 589, 385 N.E.2d 281 (1978)).

■ With respect to damages for loss of goodwill, business reputation or future profits, the proof requirements are much more stringent. *See Toltec Fabrics, Inc. v. August Inc.,* 29 F.3d 778, 781–782 (2d Cir. 1994). Not only must the claimant prove the fact of loss with certainty, but the "loss must be 'reasonably certain in amount.'" *Id.* at 781 (quoting *Robert T. Donaldson, Inc. v. Aggregate Surfacing Corp.,* 47 A.D.2d 852, 366 N.Y.S.2d 194, 196 (2d Dep't 1975)). "In other words, the damages may not be merely possible speculative or imaginary but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Beeland Interests, Inc. v. Armstrong,* 1999 WL 813266 at *17, 95 Civ. 8132 (S.D.N.Y. Oct. 12, 1999) (dismissing claim for lost profits where plaintiff failed to prove "both the fact and amount of lost profits with reasonable certainty").

## III. Baseball's Proffered Damages Evidence

■ During discovery, ESPN served Baseball with interrogatories regarding its claims for monetary damages. Among

other things, ESPN asked Baseball to "state the amount of monetary damages you seek in this action and explain the basis for the computation of your claim." ESPN Interrogatory No. 6, Ex. A to Lobenfeld Aff. at 7. Baseball responded as follows:

> Baseball has not quantified the amount of damages it has sustained by reason of ESPN's willful refusal to carry [baseball] games as required by the 1996 Agreement. A quantification of those damages, however real, is extremely complex and for that reason Baseball insisted, and ESPN agreed, in the 1996 Agreement that ESPN would produce and distribute the telecasts and that its failure to do so could be specifically enforced, without regard to the need for Baseball to prove irreparable harm. At its essence the damages, believed to exceed millions of dollars, are attributable to [loss of national television exposure; promotional opportunities and ratings; value of the "Sunday Night Baseball" television package; prestige; potential sponsorships; and the future value of all of Baseball's national telecast packages].

*Id.* at 7–8.[2] Nowhere in its response does Baseball set forth any specific, dollar amount of monetary damages other than its estimate that damages are "believed to exceed millions of dollars." Nor does Baseball set forth any method of calculating its alleged damages.

As the following excerpts demonstrate, Baseball's 30(b)(6) witness on the topic of damages, Baseball's President Paul Beeston, was equally speculative and vague regarding the alleged harm caused by ESPN's breach.

Q: Has Baseball quantified any of the damages it alleges in this case?

A: No, we have not quantified it to the extent of a specific dollar, no.

Q: Has Baseball made any calculations as to any specific element of its alleged damages?

A: We have not.

Q: Is there a reason why Baseball has not done any calculation of its damages in this case?

A: No. We just believe it's significant. We believe that the case speaks for itself at the present time, and we have not worked out what the dollars are of the damages.

9/27/99 Deposition of Paul Beeston ("Beeston Dep.") at 6–7.

\*　　\*　　\*　　\*　　\*　　\*

Q: [W]hat's the basis for your belief that Baseball's alleged damages exceed millions of dollars?

A: Based on what we have right here and what we've said what we've [g]ot here going forward. I don't have anything specific, as I said.

Q: [I]f somebody suggested to you that they believed you're right, Baseball was damaged but it's only a hundred thousand dollars, would you be able to point me to anything to say it's not a hundred thousand dollars, it's a million dollars?

A: Specifically I won't be able to say this is what it is, try this calculation and that's the way it works out, no.

*Id.* at 28.

\*　　\*　　\*　　\*　　\*　　\*

---

**2.** Baseball's interrogatory response is quite revealing. Baseball concedes that it had agreed that in the event of a breach it would seek "specific[ ] enforce[ment]" without the need to prove "irreparable harm." Baseball's failure to seek that specific enforcement is puzzling and leads one to question whether it really wanted the games aired, or whether it really wanted an excuse to renegotiate a contract which it no longer found sufficiently lucrative. On the other hand, ESPN's behav-ior is also suspect. In the November 22 opinion, I held that ESPN should not have engaged in self-help but should have sought judicial intervention as to whether Baseball's failure to grant permission to broadcast football in place of baseball games was unreasonable. ESPN's failure leads one to question whether the fear of an adverse ruling, and the accompanying loss of millions of dollars in revenues, caused ESPN to choose the option of intentionally breaching its contract.

Q: Can you point to anything specific as evidence that ESPN's [breach] has made Baseball less valuable in any way?

A: "Specifically, no if you're asking for one example that I could give you...."

Q: You say you think it probably hurt you. Are you able to point to us specifically—

A: No, I said I cannot.

*Id.* at 10–11. Not once during his deposition did Beeston offer a concrete example of harm or monetary loss stemming from ESPN's breach. Baseball's expert witness, Robert J. Wussler, was similarly unable to cite specific examples of loss. During his deposition, Wussler testified as follows:

Q: Are you aware of any money that Baseball lost as a result of those three games?

A: No I'm not.

Q: And the same thing is true in '99, same question with respect to '99?

A: They've lost in perception. It's very hard to evaluate dollars and perception.

Q: I'm not going to ask you about perception. You are not aware of any dollars lost, correct?

A: I'm not.

10/15/99 Deposition of Robert J. Wussler at 92–93.

\*　　\*　　\*　　\*　　\*　　\*

Q: Again, just so I'm clear, are you aware of 5 cents of advertising revenue that Baseball lost as a result of

the three games being [not shown on ESPN]—

A: No I'm not.

*Id.* at 107.

\*　　\*　　\*　　\*　　\*　　\*

Q: I take it you are not aware of any lost sponsors or lost advertisers; is that correct?

A: That is correct.

*Id.* at 108.

Finally, on November 23, this Court held oral argument on ESPN's motion to preclude damages evidence. During that argument, this Court specifically asked counsel for Baseball whether Baseball had any "concrete proof of monetary harm." *See* Transcript of 11/23/99 Hearing ("11/23/99 Tr.") at 23. In response, counsel for Baseball merely reiterated the entirely subjective and speculative assertion that Baseball "feel[s] this was very dilatory [sic] to our position and denigrated our product and cost us in the marketplace and otherwise." *Id.* at 28. Counsel for Baseball was unable to show "any loss of sponsorship, any loss of advertising, [or] any loss of ancillary sales or ticket sales." *Id.* at 36. As counsel for Baseball conceded: "We have not shown specific losses your Honor, we agree with you there. What we have said is we believe it did affect us." *Id.*[3]

## IV. Discussion

As the above-quoted testimony and answers to ESPN's interrogatories demonstrate, there can be no question that Baseball has failed to adequately demonstrate either the fact of damages or the amount

---

**3.** At the end of oral argument, counsel for Baseball set forth, for the very first time, an alternate theory of damages. Baseball proposed that damages be calculated according to the amount it would have sought had ESPN asked Baseball to "sell the right to dump [Baseball] onto [another channel]." 11/23/99 Tr. at 30. In other words, Baseball seeks to calculate damages based on a hypothetical negotiation or sale of the six preempted games.

Regardless of the merits of Baseball's alternate theory, I reject it as a basis for the calculation of damages. Baseball's failure to mention this alternate theory of damages until six days before trial—months after the close of discovery and weeks after the submission of pre-trial motions—bars it from presenting such a theory at trial.

of damages. Put simply, Baseball's subjective belief that the amount of damages is "significant"—no matter how fervent—does not meet any of the required proofs set forth under New York law. Baseball has not cited a single lost promotional opportunity, sponsor or advertising dollar stemming from ESPN's breach. Nor has Baseball set forth any evidence of a decrease in ratings or box office ticket sales. Although damage to Baseball's prestige and future value are difficult to prove, such difficulty does not allow Baseball to proceed with speculative claims of damages. To the contrary, under New York law, a claim of damages for loss of reputation and future profits must be "reasonably certain." *See Toltec Fabrics*, 29 F.3d at 781–82; *see also Schonfeld v. Hilliard*, 62 F.Supp.2d 1062, 1081–82 (S.D.N.Y. 1999).

Baseball's damages claim is based on nothing more than its own vague assertions that it was "hurt." Baseball cites no specific examples of monetary damage, nor does it proffer a method for calculating such damages. The proffered unsupported allegations are simply inadequate to sustain a claim for damages under New York law, and therefore ESPN's motion to preclude damages evidence is granted.

## V. Nominal Damages and Materiality

■ Although Baseball is not entitled to an award of money damages, it may still receive nominal damages. "[I]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of the loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Hirsch Elec.*

*Co. v. Community Servs., Inc.*, 145 A.D.2d 603, 536 N.Y.S.2d 141, 142–43 (2d Dep't 1988); *see also Contemporary Mission*, 557 F.2d at 926 (when the existence of damage is speculative "plaintiff is limited to the recovery of nominal damages").[4] Accordingly, I will instruct the jury that if Baseball proves its breach of damages claim, it is entitled to an award of nominal damages.[5]

■ Baseball's ability to recover only nominal damages does not impede its ability to present testimony and evidence regarding the materiality of ESPN's breach. Materiality goes to the essence of the contract. That is, a breach is material if it defeats the object of the parties in making the contract and "deprive[s] the injured party of the benefit that it justifiably expected." Farnsworth, Contracts § 8.16 (3d ed.1999). Materiality does not depend upon the amount of provable money damages, it depends upon whether the nonbreaching party lost the benefit of its bargain. Thus, although Baseball is only entitled to nominal damages, it may still present evidence and argument to the effect that ESPN's breach was material. *Cf. Chronister Oil Co. v. Unocal Refining & Marketing*, 34 F.3d 462 (7th Cir.1994) (Posner, J., awarding nominal damages where breach was material).

## VI. Experts

Because I am precluding Baseball from offering damages evidence to the jury, the parties proposed experts, Don Ohlmeyer and Robert Wussler, are similarly precluded from offering testimony as to damages. Moreover, because I previously ruled that Wussler is precluded from testifying on any of the other topics set forth in his

---

4. Although unable to prove monetary damage, there is no question that Baseball was harmed by virtue of ESPN's breach. Baseball was entitled to the broadcast of six baseball games during September 1998 and September 1999. When ESPN failed to broadcast those games, ESPN was harmed regardless of whether it can prove any monetary damage.

5. Although ESPN breached the 1996 Agreement when it preempted baseball games without Baseball's approval, in order for Baseball to prove its breach of contract claim, it must first demonstrate that it substantially performed under the contract.

expert report, Wussler may not testify as an expert witness at trial.

## VII. Conclusion

For the reasons set forth above, Baseball is precluded from presenting damages evidence at trial and is only entitled to seek an award of nominal damages.