■ MJM ADVERTISING, INC. et al., Appellants, v PANASONIC INDUSTRIAL COMPANY, Respondent, et al., Defendants. [770 NYS2d 10]—

Order, Supreme Court, New York County (Charles Ramos, J.), entered July 19, 2002, which granted defendant's motion to dismiss plaintiffs' first and second causes of action, granted defendant's motion for fees and costs, and denied plaintiffs' cross motion for summary judgment on their first cause of action, unanimously modified, on the law, so as to deny defendant's motions, vacate the provision of the order granting defendant fees and costs, and reinstate plaintiffs' first and second causes of action, and as so modified, affirmed, without costs.

The motion court properly denied plaintiffs' cross motion for summary judgment on the first cause of action on behalf of plaintiff MJM Advertising Inc. (MJM); however, it erred in granting Panasonic's motion to dismiss that cause of action. The evidentiary materials submitted by plaintiffs created issues of fact as to whether Panasonic's authorized representatives entered into an interim oral arrangement with MJM to provide advertising services pursuant to the terms of the prior written contracts. The affidavit of Jed Jacobs should not have been rejected as a matter of law; the question of the probative value of his assertions should be left to the jury, and it is not the court's function on a motion for summary judgment to assess

credibility (*see Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997]). The court was mistaken in asserting that plaintiffs did not refute Panasonic's evidence that MJM provided no services with regard to the 1997 Christmas advertising campaign, and the letter sent upon learning that Panasonic was disputing his entitlement to an agency fee on the Carat media purchases does not "disavow" any entitlement to agency fees or commissions, but merely states that any excess funds will be returned to Panasonic after all MJM's expenditures are repaid.

We reinstate, as well, the second cause of action, in which plaintiff Marshall Jaccoma Mitchell Advertising, Inc. (MJMA), another company formed by plaintiff Richard B. Mitchell, initially alleged that from 1991 through 1995, while it was Panasonic's advertising agent under a written contract, it was required by representatives of Panasonic to set aside a portion of its 15% commission to use as a fund to pay certain expenses that were the obligation of Panasonic, and seeks reimbursement of sums it paid from that fund. There is ample evidence that the alleged rebate system existed, and that Mitchell and his various corporate entities made disbursements in accordance with it. Panasonic's claim that the rebates were merely "commission rate adjustments" to which Mitchell agreed is an issue to be considered at trial, and does not warrant summary judgment. As to Panasonic's contention that plaintiffs may not claim any of the rebated funds because MJMA disbursed them at Jacobs's or Parson's direction, without determining that they were being expended for Panasonic's benefit, it cannot be concluded as a matter of law on the submitted evidence whether there was any misuse of the rebate funds and if so, to whom any misconduct should be ascribed.

Although plaintiff failed to deliver relevant supporting documents to defense counsel's office by August 21, 2001, he complied with the next order of the court, dated October 15, 2001, which required delivery by October 19, 2001. Indeed, it is undisputed that plaintiff delivered all documents relating to the second cause of action, which relates only to MJMA, in advance of the deadline set by the court's October 15, 2001 order. Thus, his behavior was not in bad faith or contumacious, especially in view of the serious emotional and health problems he described (*see Limones v City of New York*, 256 AD2d 54 [1998]), and did not warrant the sanction of dismissal or any other sanction.

We disagree with the court's conclusion that plaintiffs failed to provide the required proof recalculating the amount of the rebate sought. The record reflects that plaintiffs provided sufficient information to establish damages.

While the claims for the rebate for 1991 and 1992 are untimely, as the motion court determined, the claims for 1993 ($176,333), 1994 ($182,783) and 1995 ($193,109) are not. The record indicates that the amount of the rebate was determined at the end of the calendar year, and was not disbursed until the end of the following year, usually in November. Thus, plaintiffs' application for a rebate for 1994 is timely, as no determination or disbursement of that amount would have been due until well after the statutory cutoff date of April 20, 1994. Indeed, that reasoning supports the rebate claimed for 1993 as well.

Moreover, on the current record, plaintiffs' claim for reimbursement of the 1995 rebate cannot be rejected as a matter of law. Notwithstanding the assertion that MJMA did not actually disburse the $193,109 rebate for 1995 for which it seeks reimbursement, the record supports the inference that given the relevant time periods, the funds set aside in 1995 for distribution in 1996 would have been disbursed by Poppe, the successor to MJMA. In any event, any failure by plaintiffs to specifically quantify the amount to which they claim MJMA is entitled for 1995 is not fatal at this stage of the proceeding under these circumstances (see Berley Indus. v City of New York, 45 NY2d 683 [1978]).

Finally, because the documents provided contained the information needed to justify the viable damages claim on the second cause of action (see McCormack v 61 W. 62 Owners Corp., 161 AD2d 361 [1990]), and were provided in a sufficiently timely manner, sanctions were not called for here. Concur—Saxe, J.P., Rosenberger, Friedman and Marlow, JJ.