09-3854-cv, 09-4026-cv
INEOS Americas LLC v. The Dow Chemical Company

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of May, two thousand ten.

PRESENT:

> JOHN M. WALKER, JR.,
> CHESTER J. STRAUB,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges.*

———————————————————————————————

INEOS Americas LLC and INEOS Oxide Limited,

> *Plaintiffs-Appellants-Cross-Appellee,*

> v.                                                        09-3854-cv, 09-4026-cv

The Dow Chemical Company,

> *Defendant-Appellee-Cross-Appellant.*

———————————————————————————————

FOR APPELLANTS:          RICHARD W. CLARY (RACHEL G. SKAISTIS, *on the brief*), Cravath, Swaine & Moore, LLP, New York, NY

FOR APPELLEE:          THOMAS J. MOLONEY (LEWIS J. LIMAN, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiffs-Appellants-Cross-Appellees INEOS Americas LLC and INEOS Oxide Limited ("INEOS") appeal a December 9, 2008 order of the United States District Court for the Southern District of New York (Hellerstein, *J.*) granting Defendant-Appellee-Cross-Appellant The Dow Chemical Company's ("Dow") motion for summary judgment with regard to INEOS's claims for equitable relief, including specific performance, and dismissing these claims. INEOS also appeals the district court's August 12, 2009 award of nominal damages of $100 plus costs for Dow's breach of contract. Dow is in agreement with the district court's decisions regarding specific performance and damages but, on cross-appeal, argues that the district court erred in determining that Dow breached the contract. We assume the parties' familiarity with the underlying facts, procedural history, and the issues on appeal.

*A.     Background*

The relationship between INEOS and Dow began in 2000 following Dow's proposed merger with Union Carbide Corporation. The Federal Trade Commission ("FTC"), concerned about certain anticompetitive aspects of the merger, insisted that Dow divest itself of its ethanolamines ("EOA") business as a condition for approval of the merger. Dow agreed to sell to INEOS its EOA plant in Plaquemine, Louisiana. In connection with the sale of the EOA plant, Dow agreed to supply ethylene oxide ("EO"), the primary feedstock for the production of EOA, to INEOS from Dow's contiguous EO plant. The terms for Dow's ongoing sale of EO to INEOS are memorialized in the contract at issue in the instant litigation, a Supply Agreement pursuant to which Dow is to supply EO to INEOS over the 35-year term of the agreement.

The Supply Agreement, in substance, states that INEOS must obtain from Dow and Dow is to supply to INEOS such quantities of EO as are necessary to satisfy INEOS's requirements up to 250 million pounds per year. The agreement also gives INEOS the option to purchase, in accordance with its requirements, up to 27 million additional pounds per year for use at the Plaquemine EOA plant, for a total of 277 million pounds per year. Critical to the instant dispute, Article 5.1(e) of the Supply Agreement provides:

> Expansion of EO Plant Capacity. If at any time after the eighteenth month after the Effective Date [Dow] proposes any expansion of the capacity of the EO Plant, it shall inform [INEOS] before implementing such proposal and shall offer [INEOS] the opportunity to participate in the cost of financing such expansion. If [INEOS] accepts such opportunity and participates in the financing, the additional EO capacity which represents [INEOS's] pro rata share (based upon its share of the financing cost) of such expansion shall be reserved for supply to [INEOS] at a price which represents the Cash Cost of such EO. For these purposes "Cash Costs" means [Dow's] actual cash costs per lb. to produce such EO, which the Parties expressly agree excludes any depreciation or amortization cost or financing costs or charges, but on the basis that the cost of the ethylene used in such production shall be deemed to be the price at which such ethylene could be acquired by [INEOS] taking into account the then conditions of the ethylene market, but applying the same assumptions as have been applied by the Parties in agreeing to the definition of Ethylene Price based on market conditions at the date of this Agreement.

In 2003, Dow experienced fires at its EO plant and, as a result, decided to replace the oxygen mixer in the plant. Dow named this project, which was completed during a May 2004 plant shutdown, the Glycol II Capacity Increase Project ("Glycol II Project"). INEOS filed suit on September 18, 2006, alleging breach of Article 5.1(e) of the Supply Agreement and seeking money damages and specific performance. INEOS alleged that even though Dow anticipated a daily capacity increase in EO production as a result of the Glycol II Project, Dow never advised INEOS of this projected increase nor did Dow give INEOS an opportunity to share in the financing costs under Article 5.1(e).

On December 9, 2008, ruling from the bench, the district court granted summary judgment in favor of Dow as to INEOS's claim for specific performance, holding that "[a]ny breach of this contract is remediable by money damages and there has been no showing of irreparable damage or inability to recover money damages." A ten-day bench trial on the remainder of INEOS's claims began on June 1, 2009, and on June 18, 2009, the district court issued oral findings of fact and conclusions of law. The court determined that Article 5.1(e) is a valid and enforceable part of the Supply Agreement and that it was triggered by Dow's expansion during the Glycol II Project, creating an obligation on Dow's part to give notice to INEOS of the projected costs of the project and to invite INEOS to participate in the financing. Because Dow did not provide this notice to INEOS, the court found, Dow breached Article 5.1(e). Nevertheless, the court determined that because INEOS was aware that Dow was considering an expansion of plant capacity and because INEOS did not "have the requirements level to ask for more [EO] and increase its obligation to Dow," INEOS was entitled to only nominal damages of $100 for Dow's breach.

On appeal, INEOS contends that the district court erred in denying specific performance and, alternatively, that the district court erred by awarding only nominal damages for Dow's breach. In reply, Dow urges us to affirm the district court's determination of damages and its ruling on specific performance. On cross-appeal, Dow argues that the district court erred in finding that Dow breached Article 5.1(e). For the reasons that follow, we affirm the judgment of the district court.

**B.      *Specific Performance***

We review a district court's grant of summary judgment *de novo*. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine issue as

4

to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *McBride*, 583 F.3d at 96. We review a district court's decision to grant or deny the equitable remedy of specific performance for abuse of discretion. *See Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 76 (2d Cir. 2004); *Leasco Corp. v. Taussig*, 473 F.2d 777, 786 (2d Cir. 1973); *see also Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 249 (3d Cir. 1999). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010).

The New York Uniform Commercial Code ("U.C.C."), which both parties agree applies in this case, provides that specific performance "may be decreed where the goods are unique or in other proper circumstances." N.Y. U.C.C. § 2-716(1). The comments to this section explain that emphasis is placed on "the commercial feasibility of replacement" and that "inability to cover is strong evidence of 'other proper circumstances.'" *Id.* cmt. 2. "Specific performance is a proper remedy . . . where the subject matter of the particular contract is unique and has no established market value." *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415 (2001) (internal quotation marks omitted). Finally, "[a]lthough the Code has liberalized the right to specific performance, that remedy still remains extraordinary in character and is generally available only when other remedies are in some way inadequate." 4A Anderson on the Uniform Commercial Code § 2-716:13 (3d ed. 2009).

The district court did not err in granting summary judgment to Dow on the issue of specific performance and, to the extent the district court permitted INEOS to renew arguments related to its request for specific performance at trial, the district court did not abuse its discretion in declining

5

to award the requested relief. At the summary judgment stage, and also at trial, the undisputed evidence before the district court was that INEOS, at all times relevant to this dispute, was able to enter into short-term "tolling" agreements with alternative suppliers of EO in order to cover its current EO requirements. The district court did not err in concluding before trial that if INEOS's costs under these tolling agreements proved to be higher than they would have been under the contract with Dow, the difference between INEOS's cover price and the contract price would be easily computable and any harm flowing from the difference would be remediable with money damages. *See* N.Y. U.C.C. § 2-713(1). The trial evidence did not draw this conclusion into question. INEOS contends that specific performance was appropriate here because only long-term contractual relationships position it to begin making plans to expand its EOA business. But this is, in effect, an argument that INEOS should have been awarded specific performance based on the possibility of an EOA plant expansion, not yet planned, to occur sometime in the indefinite future. The district court did not err in declining to afford extraordinary relief based on a claim founded on such "speculation [and] conjecture." *See Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1010 (2d Cir. 1991).

## C. *Breach*

"In reviewing a district court's decision in a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001). "Under the clearly erroneous standard, there is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence. We will not upset a factual finding unless we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). Although "[t]he matter of whether [a] contract

is ambiguous is a question of law for the court," *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010), the interpretation of an ambiguous contract provision is a question for the factfinder that we review for clear error, *see New Windsor Volunteer Ambulance Corps., Inc v. Meyers*, 442 F.3d 101, 111-12 (2d Cir. 2006). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

On cross-appeal, Dow argues that the district court erred when it determined that the Glycol II Project was a plant expansion triggering Article 5.1(e) and that Dow's failure to notify INEOS of the proposed capacity increase and to offer INEOS a chance to participate was a breach of the Supply Agreement. We disagree. Central to its decision was the court's finding that Dow projected an increase in capacity as a result of the Glycol II Project from 1.7 million pounds of EO per day to 1.9 million pounds per day based on the plant's "effective capacity." Dow contends that this was error, and that Article 5.1(e) contemplates not a measurement of the plant's effective capacity, but rather its maximum design capacity. We agree with the district court that, when viewed in the context of the agreement as a whole, whether Article 5.1(e) refers to effective or design capacity is unclear from the face of the agreement. Moreover, reviewing the evidence presented at trial, we cannot say that the district court clearly erred in determining that "capacity" in Article 5.1(e) refers to a "practical" measure of "what in practice [the EO plant] could reliably and safely produce over a consistent period of time." The district court's choice between two permissible views of the evidence was not clear error in this case. Similarly, the district court's finding—after hearing testimony and viewing evidence—that Dow projected an effective capacity increase in its EO plant from 1.7 million pounds per day to 1.9 million pounds per day as a result of the Glycol II Project was not clearly erroneous and we agree with the district court that this increase in capacity triggered Dow's obligations under

7

Article 5.1(e).

Also on cross-appeal, Dow contends that even if the Glycol II Project resulted in a capacity increase triggering its notification obligations under Article 5.1(e), the district court erred in determining that the notice provided was inadequate to satisfy those obligations. We disagree. The district court determined that while INEOS was aware that the Glycol II Project was being undertaken by Dow, Dow told INEOS only that "this was a project to improve reliability" and that INEOS was not informed of the projected capacity increase. Given Article 5.1(e)'s requirement that if Dow "proposes any expansion of the capacity of the EO Plant, it shall inform [INEOS] before implementing such proposal and shall offer [INEOS] the opportunity to participate in the cost of financing such expansion," it was not error for the district court to find a breach in the circumstances of this case. While Dow did inform INEOS that it was replacing the oxygen mixer at the plant, Dow's argument that it satisfied its Article 5.1(e) obligation because INEOS could have inferred how much the project would cost and by how much the plant's capacity would increase is unavailing. The plain language of Article 5.1(e) provides that Dow's notification obligation is more specific—Dow was required to both *inform* INEOS before implementing a capacity increase proposal and *offer* INEOS the opportunity to participate in financing. Since Dow indisputably did not offer INEOS the opportunity to participate in financing the Glycol II Project, even if it notified INEOS of aspects of its plans, it breached Article 5.1(e).

### D. Damages

"Although the amount of recoverable damages is a question of fact, the measure of damages upon which [a] factual computation is based is a question of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40 (2d Cir. 2009). We thus review *de novo* a district court's calculation of

damages. *Id.* Additionally, under New York law, "[i]t is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered." *Berley Indus., Inc. v. City of New York*, 45 N.Y.2d 683, 686 (1978).

Here, the district court determined that "[because] the Supply Agreement is a requirements contract, INEOS is entitled only to damages that correspond to its actual requirements." Since INEOS, at the times relevant to Dow's breach, was able to cover with tolling agreements its requirements beyond the 277 million pounds it could take from Dow under the Supply Agreement, and because INEOS's costs under those tolling agreements were less than its costs would have been under the Supply Agreement, the district court found that INEOS was entitled to only nominal damages.

INEOS now challenges this determination by contending that it was entitled to damages under New York U.C.C. § 2-713 regardless of whether it required or could have accepted delivery of the EO. That is, INEOS asserts entitlement to damages for all of the EO that Dow would have been required to "reserve" for INEOS—without regard to its requirements—under Article 5.1(e) if Dow had not breached and had INEOS accepted an offer to share in financing. We reject this argument and agree with the district court that the purpose of the Supply Agreement, including Article 5.1(e), is to provide INEOS with EO only up to its requirements. This purpose is reflected in numerous provisions of the contract, including Article 2.1, which states that the "purpose of this Agreement is for [INEOS] to obtain from [Dow] and [Dow] to supply [INEOS] such quantities of EO as are necessary to satisfy [INEOS's] requirements . . . for use in [INEOS's] production of products at the [Plaquemine Facility]." More specifically, various provisions of Article 5 refer to INEOS's requirements and there is nothing in the text of the Supply Agreement from which we

could conclude that Article 5.1(e), unlike the rest of the Agreement, conveys upon INEOS an ability to demand from Dow EO in excess of its requirements.

With this in mind, we affirm the district court's award of nominal damages for Dow's breach. Under New York U.C.C. § 2-306, governing requirements contracts, a contract term that measures quantity by the requirements of the buyer "means such actual . . . requirements as may occur in good faith." N.Y. U.C.C. § 2-306(1). Here, since the Supply Agreement provides that INEOS is entitled to take from Dow only the EO it requires for production of EOA at its Plaquemine facility, INEOS's good faith requirements cannot exceed the amount it is able to use at its Plaquemine facility. Given the testimony presented to the district court at trial, we find no clear error in the district court's conclusion that even had Dow performed under Article 5.1(e), INEOS "failed to prove that it would have been able to take up additional capacity in any of the relevant years beginning in 2004" beyond what it obtained from Dow under the Supply Agreement and what it was able to cover with lower-cost tolling agreements. Therefore, because INEOS either obtained from Dow or obtained at a lower cost from other sources all of the EO it required to produce EOA at the Plaquemine facility during the period relevant to this action, INEOS has not met its burden of showing that it suffered compensable damages as a result of Dow's breach. *See id.* § 2-712(2) (explaining that a "buyer may recover from the seller as damages the difference between the cost of cover and the contract price"); *id.* § 2-713(1) ("[T]he measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price.").

Because we affirm the district court for the reasons stated herein—including its determination that the Glycol II Project was a capacity expansion under Article 5.1(e) and its award of nominal

10

damages—we need not reach the question briefed by INEOS whether the district court correctly calculated the extent of the EO plant expansion. We have considered the remainder of the arguments presented in this case and have determined that they do not affect our conclusions here.

For the foregoing reasons, the judgment of the district court are hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk