*470 Order, Supreme Court, Bronx County (Edgar G. Walker, J.), entered January 14, 2013, which, insofar as appealed from as limited by the briefs, denied defendants/third-party plaintiffs’ motion for summary judgment dismissing the common-law negligence and Labor Law §§ 200 and 241 (6) claims, and for summary judgment on their third-party contractual indemnification claim against third-party defendant J. Blanco Associates, Inc., unanimously modified, on the law, to grant the portions of the motion seeking summary dismissal of the Labor Law § 241 (6) claim as predicated on 12 NYCRR 23-1.8 (b) and conditional summary judgment on the contractual indemnification claim, and otherwise affirmed, without costs.
Plaintiff Joseph Cerverizzo, an employee of third party defendant subcontractor Delta Installations, Inc., suffered injuries allegedly due to the inhalation of toxic fumes while he was installing brackets in an empty aeration tank at the Hunts Point Sewage Treatment Plant, owned by defendants New York City and the Department of Environmental Protection (DEP), which hired defendant Yonkers Construction Corp., as general contractor, to upgrade the plant (collectively, defendants).
The court properly denied the portion of defendants’ motion seeking dismissal of plaintiffs’ Labor Law § 241 (6) claim as predicated on 12 NYCRR 23-1.7 (g). We find that, as a matter of law, the aeration tank is an unventilated confined area requiring air quality monitoring (see Buchholz v Trump 767 Fifth Ave., 4 AD3d 178, 179 [1st Dept 2004], affd 5 NY3d 1 [2005] [holding that “the question of the applicability of the section is a purely legal one”]). Pursuant to 12 NYCRR 23-1.7 (g), the atmosphere of an unventilated confined area must be monitored “where dangerous air contaminants may be present or where there may not be sufficient oxygen to support life.” Here, the cement tank is a large container used to aerate and clean sewage. Entering the tank poses a potential hazard since, as admitted by a deputy superintendent for the DEP in his deposition, a person could experience oxygen depletion as gases “displace the oxygen.”
Defendants contend that in order for an area to be a confined space, as defined by 12 NYCRR 12-1.3 (f), it must have a restricted means of access, such as a trap door or a manhole. We reject this argument. An area does not need to be accessible only by a narrow opening in order to have a “restricted means *471 of egress” (12 NYCRR 12-1.3 [f]). Although the top of the tank was open to the air, access was still restricted as Cerverizzo needed to use a 20-foot ladder to enter and exit the tank. Therefore, given the tank’s use in the process of filtering sewage and its restricted means of access, 12 NYCRR 23-1.7 (g) is applicable.
To the extent defendants contend that they had, in any event, adequately monitored the tank for air quality, the record raises triable issues of fact on this point. The daily air monitoring reports prepared by Yonkers’ air monitoring contractor, Environmental Energy Associates (EEA), contain no indication that the tank was monitored for air quality from August 17, 2004 through August 31, 2004, the day of the incident. Yonkers’ project engineer testified, and EEA’s on-site representative confirmed, that Yonkers asked EEA to monitor the aeration tank on August 31, 2004, after plaintiff became sick, raising an issue of credibility for the jury to decide (see MJM Adv. v Panasonic Indus. Co., 2 AD3d 252, 252-253 [1st Dept 2003]; Morrone v Chelnik Parking Corp., 268 AD2d 268, 269 [1st Dept 2000]). In addition, evidence that Cerverizzo was feeling dizzy and nauseous prior to the day of the incident, was given oxygen for 12 hours after the incident, sustained injuries from oxygen depletion due to exposure to hydrogen sulfite gas, and was diagnosed with “hypoxicischemic encephalopathy due to toxic inhalation” raises an issue as to whether defendants adequately monitored the tank’s air quality.
The Labor Law § 241 (6) claim insofar as predicated on 12 NYCRR 23-1.8 (b) should have been dismissed. As defendants contend, Cerverizzo’s bracket installation work is not one of the activities requiring the use of a respirator pursuant to 12 NYCRR 23-1.26 and 23-2.8 and Cerverizzo has not pointed to any provision requiring a respirator for the work he was performing. To the extent 12 NYCRR 23-1.7 (g) is subject to relevant provisions of Industrial Code part 12 which require respirators, those provisions, by their plain language, apply to limited situations not relevant here (see 12 NYCRR 12-1.5 [a] [1]; 12-1.9 [a] [1]).
Because triable issues of fact exist as to whether defendants fulfilled their duty to adequately monitor the air quality in the subject tank, and thus, whether they had constructive notice of the fume condition that caused Cerverizzo’s injuries, dismissal of the common-law negligence and Labor Law § 200 claims was properly denied (see Personius v Mann, 5 NY3d 857, 859 [2005]; Debellis v NYU Hosps. Ctr., 12 AD3d 320, 321 [1st Dept 2004]).
However, defendants are entitled to conditional summary *472 judgment on their contractual indemnification claim. The broad indemnification clause provides for indemnification for injuries “arising out of or in connection with . . . , the Work of the Subcontractor under this Subcontract . . . whether caused in whole or in part by the Subcontractor” and it does not purport to indemnify defendants for their own negligence (see Cuomo v 53rd & 2nd Assoc., LLC, 111 AD3d 548 [1st Dept 2013]; Burton v CW Equities, LLC, 97 AD3d 462, 463 [1st Dept 2012]). Concur — Mazzarelli, J.P., Sweeny, Andrias, DeGrasse and Richter, JJ.